IN THE MATTER OF PROVING THE ALLEGED LAST WILL
AND TESTAMENT OF CHARLES HATHAWAY, deceased.

The issuing of a commission to a person, empowering him to act as surrogate in a particular case, as authorized by the amendment to the Revised Statutes enacted in 1830 (§ 20, chap. 320, Laws of 1830), where by reason of statutory disqualification neither of the officers designated can act, is not an appointment to a " public office " within the meaning of the provision of the judiciary article of the State Constitution of 1846 (art. 6, § 8), prohibiting the judges of the Court of Appeals and justices of the Supreme Court from exercising "any power of appointment to public office." (CHURCH, Ch. J., ANDREWS and MILLER, JJ.), dissenting.

The term "public office" as used in the Constitution, has respect to a permanent public trust or employment, to \       ~ised generally and in all proper cases ; it does not include the app\        ⁺o meet special exigencies, of an individual to perform transient, o\_        ~ incidental duties, such as are ordinarily performed by public b       ns to such appointments, the Legislature is left untrammelled, a\.       'berty to invest the courts with power to make them.  '(CHURCH, Ch.       NDREWS and MILLER, JJ.), dissenting.

The power, therefore, to issue such a commission, conferred b_    aid act upon the chancellor, was by the provision of the judiciary act of 1847 (§ 16, chap. 280, Laws of 1847), which invested, the Supreme Court and its justices with the powers and jurisdiction formerly exercised by the Court of Chancery and the chancellor, transferred to and vested in the Supreme Court and the justices thereof.   (CHURCH, Ch. J., ANDREWS and MILLER, JJ.), dissenting.

The said provision of the act of 1830 has not been repealed or affected by any of the various revisions of the law since the adoption of the Constitution of 1846.

Accordingly held, that a Special Term order appointing a person to act as surrogate, and directing a commission to issue to him in the matter of the probate of a will, in a case where a surrogate, county judge and district attorney were disqualified from acting was valid.

Also, held, that the parties by proceeding with the hearing before the commissioner and awaiting the result of his action, waived any objection to the jurisdiction of the court to appoint without notice to the parties interested.

(Argued June 9, 1877; decided November 20, 1877.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, affirming an order of Special Term which denied a motion to vacate an *ex parte*

order appointing a commissioner to act as surrogate in the matter of the probate of the will of Charles Hathaway, late of Delhi, Delaware county. (Reported below, 9 Hun, 79.)

Said Hathaway died in January, 1876, possessed of real and personal property of the value of about $70,000, and leaving a will disposing of his estate. One of the executors named therein was the district attorney of said county, and another was related by marriage to the county judge, who was also surrogate. Upon petition showing that the county judge and district attorney were disqualified to act in the probate of the will, an *ex parte* order was granted appointing Harvey F. Davidson to act as surrogate so long as the disability of the surrogate should continue, and directing that a commission should issue to him. A commission was accordingly issued, and the commissioner duly qualified and entered upon the performance of his duties. Citations were duly issued. The appellant, Jane Wright, a sister and heir-at-law of the deceased, appeared and contested the probate of the will. The will was admitted to probate and letters testamentary issued to the executors named therein, April 24, 1876. The papers upon which the motion herein was made, were served in June, 1876.

*D. D. Niles*, for appellant. The power to appoint an acting surrogate was abrogated by the Constitution of 1846, and subsequent legislation. (*Colton* v. *Ross*, 2 Paige, 396; Laws 1847, chap. 470, § 32 ; Laws 1871, chap. 859, § 8 ; *Holmes* v. *Smith*, 3 Hun, 413; Const., art. 14, § 8; id., art. 6, § 8; *In Re Wolford*, Albany Special Term, 1876; *In re Wood*, 2 Cow., 29; *People ex rel.* v. *Nostrand*, 46 N. Y., 382; *Comm.* v. *Evans*, 74 Pa. St., 124; *Goshen* v. *Stonington*, 4 Conn., 209; *In Re Carpenter*, 7 Barb., 30; *People ex rel. Ross* v. *City of Brooklyn*, 4 W'kly Dig., 267; 15 Alb. L. J., 289; *Ellis* v. *Paige*, 1 Pick., 43, 45; *Buck* v. *Spofford*, 31 Me., 34; *Lyon* v. *Smith*, 11 Barb., 124; *In re Southworth*, 5 Hun, 55; *Longlois* v. *Longlois*, 48 Ind., 60; *Nichols* v. *Squire*, 5 Pick., 168; *Rutland* v. *Mendon*, 1 id.,

154; *Blackburn* v. *Walpole*, 9 id., 97.) The appointment of an acting surrogate being a judicial proceeding, those interested in the estate of the decedent were entitled to notice of the application therefor. (*In re Cooper*, 22 N. Y., 67, 82, 84; *Striker* v. *Kelly*, 2 Den., 332; *Kinderhook* v. *Claw*, 15 J. R., 587; *Peters* v. *Newkirk*, 6 Cow., 103; *Elmendorf*, v. *Harris*, 23 Wend., 628; *Marine Bank* v. *Van Brunt*, 49 N. Y., 161; *Tracy* v. *Corse*, 58 id., 142; *Doubleday* v. *Newton*, 9 How. Pr., 71; *Rathbone* v. *Miller*, 6 J. R., 281; *Bouton* v. *Neilson*, 3 id., 474; *People* v. *Tallman*, 36 Barb. 222; *Harris* v. *Preston*, 10 Ark., 201.) The appellant has done nothing to waive or impair her right to object to the order making the appointment. (*Avery* v. *Slack*, 17 Wend., 85; *Gates* v. *Ward*, 17 Barb., 34; *People* v. *Cent. R. R. of N. J.*, 42 N. Y., 283; *Titus* v. *Relyea*, 8 Abb. Pr., 177; *Dudley* v. *Mahew*, 3 N. Y., 9; *Germond* v. *People*, 1 Hill, 343.)

*D. S. Arbuckle*, for respondents. The act of 1830 (chap. 320, § 21), authorizing the appointment of an acting surrogate has not been repealed. (*Wallace* v. *Bassett*, 41 Barb., 92; Potter's Dwar. on Stat., 155, and note 5; *Daviess* v. *Fairbaine*, 3 How. [U. S.], 636, 644; *Goldson* v. *Buck*, 15 East, 372; 3 R. S., [5th ed.] 167, § 71; 2 Ed. Stat., 81, § 54; 3 R. S. [6th ed.], 87, § 86; Dayton on Sur., 46; Redf. on Sur., 4; Wil. on Exrs. [3d ed.], 54; 3 Fay's Dig., 827; *People ex rel.* v. *Palmer*, 52 N. Y., 83–88.) The acting surrogate appointed was not a county officer. (*People* v. *Draper*, 15 N. Y., 532, 537; *In re Carpenter*, 7 Barb., 30; *In re Whiting*, 3 id., 513, 517.)

ALLEN, J. By an amendment of the Revised Statute, enacted in 1830 (S. L., Chap. 320, § 20), power was conferred upon the chancellor, when neither the surrogate, first judge, or district attorney of the county could act, by reason of the disqualifications imposed by statute, in respect to any will, or the estate of any intestate, to issue a commission to some suitable person empowering him to act as surrogate in

the premises. Provision has been made for cases of vacancy in the office of surrogate. (2 R. S., 79, 550; id., 554.)

By section 49 (2 R. S., *supra*), the power to act in individual cases of the incapacity of the surrogate was devolved upon the first judge of the county, and by a separate enactment in section 50, general power to act as surrogate, during a vacancy in the latter office, was conferred upon the same official. Upon the happening of a vacancy in the office of surrogate, the first judge of the county became the acting surrogate, with all the powers incident to that office, pursuant to the special and independent enactment in section 50, while in the case provided for by section 49, he had the powers of a surrogate over the particular estate in respect to which the surrogate was prohibited from acting; and in making provision by section 54 for the incapacity of both surrogate and first judge, and for a vacancy in both offices, the same distinction is observed, and the two cases, disqualification and vacancy, are provided for by conferring the same powers upon the district attorney as were given by the preceding sections to the first judge, the sections being applied distributively to the case for which each was enacted.

The added clause, by the amendment of 1830, did not undertake to provide for any vacancy which might occur in the offices designated in succession as the depositaries of the powers of the surrogate, but merely to provide for the incapacity to act of the officers named in a particular case. Other statutes made provision for the filling of vacancies in the several offices, and it was not supposed that the three could or would remain vacant for any length of time, or so as to inconvenience the public by delay, and it was not deemed necessary to provide for a general vacancy. There is no evidence, and it cannot be presumed that the Legislature intended to confer upon the chancellor the power to fill a vacancy by the appointment of a suitable person to the office. The language of the added clause of the section will not permit such an interpretation. It declares that

when there shall be no person capable of acting under the provisions of the title, of which the section was a part, the chancellor should issue a commission empowering some person to act in the premises — that is, in respect to the matter in which neither of the officers named could act, and not to perform the general duties of the office of surrogate. The amendment relates exclusively and in terms to the disqualifications and incapacities imposed by statute, and not to the vacancies which might occur under the general laws of the State. (1 R. S., 122, § 134.) The power of the chancellor was to issue a commission in a special case and for the performance of a special duty, and not to commission a public officer generally for the performance of all duties pertaining to a civil office. This would have been in direct conflict with the power conferred upon the Governor and Senate, and upon the Governor during the recess of the Senate to fill the vacancy in the office of surrogate temporarily. (1 R. S., 107, § 9; Id. 123, § 42.)

By the Constitution of 1846, the Court of Chancery and the office of Chancellor were abolished and the Supreme Court substituted, with general jurisdiction in law and equity; and by the judiciary act of 1847 (chap. 280, § 16), the Supreme Court, organized under that Constitution, was invested with the same powers and jurisdiction as were then possessed and exercised by the Court of Chancery, and the justices of the court, with the same powers and jurisdiction as were then possessed and exercised by the chancellor, " so far as consistent with the Constitution and provisions of this act."

It is not denied that, unless inhibited by the Constitution, the power and jurisdiction conferred upon the chancellor by the amendment of 1830 to section 54 of the Revised Statutes were, by the act of 1847, transferred to and vested in the Supreme Court and the justices thereof. By the Constitution of 1846 (art. 6, § 8), the judges of the Court of Appeals and justices of the Supreme Court were prohibited from exercising " any power of appointment to public office;" and

all acts conferring power upon this class of magistrates to appoint public officers, was necessarily annulled by the adoption of this provision as the paramount law of the State. (Const., art. 1, § 17.)

The term "office" has a very general signification, and is ~~~~ ~~~ to be that function by virtue whereof a person has some employment in the affairs of another; and it may be public, or private, or *quasi* public, as exercised under public authority, but yet affecting only the affairs of particular individuals. The presidency of a bank is spoken of as an office, and a trustee of a private trust is, in ordinary parlance, said to hold the office of trustee; and the term office is applied to an executor or guardian, etc. A referee, for the trial and decision of actions, is an officer exercising judicial powers under public authority. So, receivers appointed by the courts, and commissioners for the appraisal of damages for lands taken for public use, are officers, and strictly and technically exercise the functions of an office. But they are not "public officers," within the inhibition of the Constitution. If they were, they could not have derived authority from the Supreme Court, or any justice thereof, while article 6, as adopted in 1846, remained in force. While the duties of the class of officers last named, referees, etc., were of a public nature, and in a sense concerned the public and the administration of justice, and were exercised under authority derived from the State directly, and not from individuals, still they related especially to particular individuals and a specific litigation; and their authority is restricted to specific matters, and no general powers are conferred upon them authorizing to act in respect to all like cases, or in any case or matter other than specified and named in their appointment. They owed no duty to the public, and could perform no service for the public. The trust they exercise and the duties they perform are "transient and occasional." They are not called upon to take the constitutional oath of office, and are not entitled to the emoluments of the office, except such as grow out of and pertain to the duties

actually performed. Judge PLATT defines the legal meaning of the term " office " to be " an employment on behalf of the government in any statute or public trust, not merely transient, occasional, or incidental." (*In re Attorneys, etc.*, 20 J. R., 492.) When " public " is the prefix of " officer," the definition is very apt, and clearly and with precision marks the limit of the constitutional prohibition.

It then deprives the courts of all political patronage, and of the power to appoint to " public office," but leaves the Legislature untrammelled and at liberty to invest the courts with the power to designate individuals to perform transient, occasional or incidental duties, such as are ordinarily performed by public officers to meet special exigencies. " Public office," as used in the Constitution, has respect to a permanent trust to be exercised in behalf of the government, or of all citizens who may need the intervention of a public functionary or officer, and in all matters within the range of the duties pertaining to the character of the trust. It means a right to exercise generally, and in all proper cases, the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the tenure prescribed by law. The authority to delegate power in various forms, and for almost every variety of purposes, is committed to courts, and if the designating of individuals and commissioning them for special purposes, and to act on special occasions, was an appointment to a " public office " within the prohibition of the Constitution, the judiciary would be greatly embarrassed in the administration of justice, and suitors deprived of very important remedies. Commissions to examine witnesses, orders of reference, commissions of appraisal, appointment of receivers, the appointment of elisors when necessary, or the striking of a jury by persons appointed by the court would be violative of the Constitution. All these appointments are as much an appointment to a " public office " as is the appointment of a commissioner to act as a surrogate in a particular case, made necessary by the inca-

pacity of the "public officers" having general jurisdiction. The commission does not supersede or displace the officers named. The Constitution was not intended to and does not deprive the Supreme Court of the power to commission an individual to act in the proof of a will, when all officers charged with that duty are disqualified and precluded from acting. The Supreme Court, therefore, had jurisdiction in the premises. This provision of the amendment of 1830 was left intact by the various revisions of the law since the adoption of the Constitution of 1846. The revisions were chiefly to confirm the statute to the reorganization of the judicial system, and were necessary by reason of the changes made. But the changes did not make necessary any reference to this independent enactment, providing for the incapacity of all the officers named; and as the power originally vested in the chancellor had been transferred to the Supreme Court, no new enactment or change of verbiage was necessary to perfect the legislation. In such a case, the revision does not imply an intent to repeal such parts of the old act as are special and independent of the parts revised, and which are equally applicable to and necessary under the new as under the older statute. This was decided in *The Matter of Kernan* (62 N. Y., 457); reaffirmed in *People ex rel. Ross* v. *Brooklyn*, not yet reported.

The appellant, by proceeding with the hearing before the commissioner and awaiting the result of his action, waived the objection to the jurisdiction of the court to appoint without notice to those interested. The appellant cannot take her chances of the contest before the commissioner, and, failing there, fall back upon the technical objection of a want of notice of the application for his appointment.

The order must be affirmed.

ANDREWS, J (dissenting). Prior to the Constitution of 1846, a surrogate was appointed for each county. (1 Rev. Stat., 97.) By the Revised Statutes (2 Rev. Stat., 79, §§ 49, 50), the first judge of the county was authorized to act

as surrogate when the surrogate was incapable of acting, or the office was vacant, and if both the surrogate and first judge were incapable of acting, or the offices of both were vacant, the district attorney of the county, if not incapacitated, was authorized to act as surrogate. (Section 54.) By chapter 320 of the Laws of 1830, section 54 was amended by adding thereto this clause: "When there shall be no person capable of acting under the provisions of this title, the chancellor, upon petition, shall issue a commission to some suitable person, empowering him to act as surrogate in the premises." The testator, Charles Hathaway, a resident of Delaware county, died in January, 1876, possessed of real and personal property of the value of $70,000. He left a will disposing of his estate, and appointing three executors, one of whom was the district attorney of Delaware county, and another was related by marriage to the county judge. There was no separate officer elected to perform the duties of surrogate in Delaware county, nor any local officers elected to discharge the duties of county judge and surrogate in case of their inability or a vacancy. In February, 1876, Mr. Justice MURRAY, sitting at Special Term, upon a petition showing that the county judge and district attorney were disqualified to act as surrogate in the probate of the will of Hathaway, made an order appointing Harvey F. Davidson, Esq., to act as surrogate in the premises so long as the disability of the surrogate should continue, and a commission was thereupon issued to the appointee following the terms of the order.

The question presented upon this appeal is whether the power given to the chancellor by the act of 1830 has devolved upon and is vested in the Supreme Court or the justices thereof. The proposition that the power to appoint an acting surrogate which was vested in the chancellor by the act of 1830, is now possessed by the Supreme Court or a justice of that court, if it can be maintained at all, must rest upon one of two grounds; *first*, That this power was, at the time the Constitution of 1846 was adopted, a part

of the "general jurisdiction in law and equity" granted by the Constitution to the new Supreme Court created by that instrument; or, *second*, that it was transferred to and vested in the justices of that court by force of the sixteenth section of the judiciary act of 1847 (Laws of 1847, chap. 280), which conferred upon the new Supreme Court and the justices thereof the same powers and jurisdiction then possessed and exercised by the Court of Chancery, and the existing Supreme Court, and by the chancellor and the justices thereof, "so far," the section proceeds, "as the power and jurisdiction of said courts and officers shall be consistent with the Constitution and the provisions of this act."

The statute of 1830 has not been re-enacted, and no law has been passed in terms reviving or continuing it, or vesting in any court, body or officer, the power to appoint a special surrogate in the event contemplated by that statute, and this power is not now vested in any court or officer, unless it passed to the new Supreme Court under the general grant of jurisdiction in law and equity, or has been preserved and devolved upon the justices of the court by the section of the judiciary act to which we have referred.

That the power to appoint an acting surrogate in case of the disability of the incumbent or the other officers, empowered to act in his stead, was not included in the general grant to the Supreme Court of jurisdiction in law and equity, does not, we think, admit of serious question. The probate of wills was not, at the time of the adoption of the Constitution of 1846, a part of the general jurisdiction of the Supreme Court, or the Court of Chancery. The Court of Chancery was authorized by statute to take proof of lost or destroyed wills, and of wills where the witnesses resided out of the State (2 R. S., 67, Laws of 1830, chap. 320), and this as a part of its existing jurisdiction was vested, on the abolition of that court, in the new Supreme Court, under the clause of the Constitution to which we have referred. But the jurisdiction to take proof of wills, and to control the administration of the estates of decedents, was exclusively vested, except in

the special cases provided for by statute in the surrogate and the Surrogate's Court. That court exercised a distinct and independent statutory jurisdiction, subject only to the appellate jurisdiction established by law of the Supreme Court and Court of Chancery. The power of appointment given to the chancellor by the act of 1830, was a function wholly independent of his ordinary jurisdiction. It was vested in the chancellor as a convenient and suitable depository of the power, and not as an incident to equity jurisdiction. When the appointment was made the power terminated. The appointee was surrogate *pro hac vice*, and he was not subordinate to, or amenable to the jurisdiction of the chancellor, except that his orders and decrees were subject to review by the chancellor upon appeal in the same way as were the orders and decrees of the regular incumbent. The power of appointment given to the chancellor by the act of 1830, did not pass to the present Supreme Court as part of the jurisdiction in law and equity conferred by the Constitution.

We come, therefore, to the consideration of the other ground upon which it is claimed that the power to appoint an acting surrogate, given to the chancellor by the act of 1830, has been transferred to and now resides in the justices of the Supreme Court, viz.: that the sixteenth section of the judiciary act of 1847, by conferring upon the justices of the Supreme Court the powers theretofore possessed and exercised by the chancellor, continued the act of 1830 in force, modified only by substituting the justices of the Supreme Court as the appointing power in place of the chancellor. This section contains the important qualification already noticed; that only such powers possessed and exercised by the former courts and officers are vested in the new court and its justices as are consistent with the Constitution and the act. If the power of appointment conferred upon the chancellor by the act of 1830 could not be conferred upon or be exercised by a justice of the Supreme Court consistently with the Constitution of 1846, it needs no argument to show that the statute was abrogated by the Constitution. Section 17, article 1

of the Constitution declares what, without such declartion, would be the necessary consequence, that all acts of the Legislature "as are repugnant to this Constitution are hereby abrogated;" and the statute of 1847 recognizes this principle and the paramount authority of the organic law. It will be observed that the act of 1830 confers the power of appointment upon the chancellor, and not upon the Court of Chancery; and the power was, by the judiciary act of 1847 (if the statute was not abrogated), devolved upon the justices of the Supreme Court, and not upon the court of which they were members. The order appointing the acting surrogate, in the case now under review, purports to have been made by the court at Special Term; but it was good as an appointment by the justice holding the term, if the power of appointment under the act of 1830 was vested in that officer. Section 8 of article 6 of the Constitution expressly prohibits judges of the Court of Appeals or justices of the Supreme Court from exercising any power of appointment to public office. If the acting surrogate, whose appointment was contemplated by the act of 1830, was a public officer, holding on his appointment a public office, it is plain that, under the Constitution of 1846, he could not be appointed by a justice of the Supreme Court. This clause was inserted in the Constitution to check and prevent the evil of what was called judicial patronage. It was not deemed consistent with the judicial office to invest the judges of the higher courts with the power to make appointments to office, which power, prior to the Constitution of 1846, in certain cases, they possessed and exercised. Many of these offices were valuable, and especially the office of the clerk of the courts, the fees and emoluments of which were large; and, however discreetly the power of appointment was exercised, judges were exposed to have their motives questioned, and in consequence their influence impaired. When the report of the committee on the judiciary was under discussion in the Constitutional Convention of 1846, *Mr. Patterson* stated that the principal object of the com-

mittee in inserting this clause was to prohibit judges from appointing their clerks. (Debates [Atlas ed.], p. 779.) It is doubtless true, that to confer upon a justice of the Supreme Court power to appoint an acting surrogate in the contingency contemplated by the act of 1830, would not be within the evil at which this prohibition in the Constitution was aimed. It is a power which, from the nature of things, would be seldom exercised; and if any compensation is attached to the place of acting surrogate, it is not sufficient to make the position one to be sought for; nor would its bestowal be likely to subject the judge to suspicion or criticism. But this consideration is entitled to little, if any, weight, in limiting the application of a constitutional provision in a case which is within its plain and explicit language.

If the appointee under the act of 1830 is a public officer, exercising a public office, it is no answer to the constitutional objection we are now considering, to say that the prohibition was not intended to apply to this case, or that the convention which proposed it did not have in view an appointment of this character. The language of the Constitution is plain and unambiguous ; the prohibition is general and includes all public offices. To construe it according to its plain meaning, leads to no absurd or irrational result. Under such circumstances, to engraft an exception upon the general language of the provision, and to exclude a particular case from its operation, for the reason that it might properly have been excepted, or that to permit the power of appointment in the particular instance would not trench upon the general policy of the constitutional provision, would be introducing a most lax and dangerous doctrine of constitutional interpretation. Exceptions may be safely made to all general rules, but in the construction of a Constitution we must assume that the language used was carefully employed, and when a general rule is prescribed, and no exceptions are made either expressly or impliedly in other provisions and arrangements of the instrument, neither the Legislature, or judicial departments of the government can create them, upon any theory

of what would have been done, if attention had been called to the particular case. ·

We are, then, to inquire whether the power of appointment given to the chancellor by the act of 1830 was a power to appoint to public office; or, to state the same question in another form, was the appointee a public officer. It is impossible, we think, to give any other than an affirmative answer to this question. The power of appointment by the act of 1830 is given when there is no person capable of acting as surrogate under the provisions of the title of the Revised Statutes, relating to the granting letters testamentary and of administration, and the commission issued to the appointee empowers him "to act as surrogate in the premises." (2 Rev. Stat., 81, § 54, chap. 320, Laws of 1830, § 21.) He is invested, therefore, in the particular case, with all the powers of the surrogate; to take proof of wills, and make a decree establishing or rejecting them; to grant letters of administration in cases of intestacy; to compel an accounting by executors or administrators, and to decide all questions arising thereon; to make a decree of distribution of the estate, and, as incident thereto, to pass upon the rights of creditors, legatees, next of kin, or other persons interested; to make orders for the sale of real estate for the payment of debts and legacies; in short, he administers as the public and accredited agent of the law for the time being, and in the particular case judicial powers, in respect to persons and property, which, only one representing the sovereignty of the State, has any claim or right to exercise. There can be no proper definition of "public office" or "public officer," which does not include such an agency or officer. He is not the less a public officer because his authority is confined to a single case, or to narrow limits, "because it is the duty of his office, and the creation of that duty which makes him a public officer, and not the extent of his authority." (Carth., 479.) It is an office, and not simply an employment. The appointee acts, not by the consent or will of parties, but without their consent and against their will. The func-

tion which he exercises is a public one. It is the duty of the government to provide for the administration of justice, and create courts and agencies to that end, and the appointee, under the act of 1830, acts both as a court and officer, and we cannot doubt that he is a public officer; and that being such, the power of appointing him could not, under the Constitution of 1846, be vested in a justice of the Supreme Court, and that in consequence the statute of 1830 was abrogated thereby. The omission in the amended judiciary article of 1869 of the prohibition contained in the Constitution of 1846, did not operate to revive the statute of 1830. That statute conferred the power of appointment upon the chancellor. The sixteenth section of the judiciary act of 1847 did not confer it upon the justices of the Supreme Court, because it transferred to them only such powers of the chancellor as were consistent with the Constitution, and this power was not vested in the justices, because, as we have held, it was inconsistent with that instrument. There was, therefore, no legislative intent to transfer the power manifested by the act of 1847, and there has been no further legislation on the subject. This is a sufficient answer to the suggestion of counsel based upon the change made by the amended judiciary article of 1869, and it is unnecessary to consider the other answers which have been urged.

It is said that the appointment by the justices of the Supreme Court of an acting surrogate in a special case, is analogous to the conceded power of the court to appoint a referee or receiver in actions or proceedings pending in that court ; and that if such an appointment is not an appointment to a public office within the prohibition of the Constitution of 1846, the appointment of an acting surrogate by the court or a justice thereof, is not in conflict with that instrument. But the cases are not analogous, and are not governed by the same considerations. The power of courts of law and equity to appoint referees and receivers in actions pending before them was a part of their acknowledged authority and jurisdiction prior to and at the time of the adoption of the

Constitution. They were said to be officers of the court. Receivers were its ministerial agents and referees appointed to hear and decide, exercised by delegation judicial powers, in the particular case, subject to the control of the court appointing them. The power of the courts to act through official agencies of their own appointment in actions and proceedings pending before them was incident to their jurisdiction and passed to the new Supreme Court as a part of the general jurisdiction of law and equity, conferred by section 3, article 6 of the Constitution, and was made also the subject of legislative control by section 5 of the same article, which provides that "the Legislature shall have the same powers to alter and regulate the jurisdiction and proceedings in law and equity which they have heretofore possessed." Assuming, therefore, that receivers and referees are public officers (a point which we do not determine), the power of appointment, as it had, theretofore existed, was continued in the new Supreme Court by the clauses in the Constitution of 1846 to which we have referred.

These views lead to a reversal of the order below. We should have been glad if we could have reached a different conclusion. The statute of 1830 was a beneficial one, and provided for a failure of justice in the cases within its purview. There is no apparent impropriety in lodging the power of appointment of an acting surrogate in a particular case, when the surrogate is disabled or the office is vacant, in the justices of the Supreme Court.

We think there is no doubt that the Legislature may provide for the appointment of such an officer, to act temporarily in the event contemplated by the act of 1830, in counties where there are no local officers elected to perform the duties of county judge and surrogate under the provisions of the Constitution.

Whether the Legislature can now, since the removal of the restraint imposed by the Constitution of 1846, confer the power of appointment upon the justices of the Supreme Court, it is not necessary to decide. It is sufficient to say

that no attempt has been made to do it. . The validity of such legislation would probably depend upon the question whether the appointee, under such a law, is a county officer within section 2, article 10 of the Constitution.

FOLGER, RAPALLO and EARL, JJ., concur with ALLEN, J., for affirmance.

CHURCH, Ch. J., ANDREWS and MILLER, JJ., dissent.
. Order affirmed.