Dykmau, J.
The individual defendants are president and trustees of the village of Irvington, in Westchester ■ county. Under the- act of 1875 (chap. 181), these gentlemen organized themselves into a board of water commissioners, to furnish water to the inhabitants-of their village, and, pursuant to the statute, held an election, and submitted to the village the question *165 whether it would have water introduced or not. A majority of the votes having been cast in favor of the project, the water commissioners were about to proceed, when the plaintiffs intervened, and in this action secured a preliminary injunction restraining any further action on the defendants’ part.
The case is now submitted for judgment on a statement of facts agreed to by both plaintiffs and defendants.
The plaintiffs are tax-payers, and under the Taxpayers’ Act of 1873 allege that the defendants’ project involves waste and injury to the property óf the village of Irvington. It is not alleged that funds in possession or expectation will be squandered ; but the plaintiffs rest their case on the proposition that contracts will be executed by the defendants, and bonds issued or an assessment laid, while neither contracts, bonds, nor assessment, will be valid.
It will be assumed to be within the Tax-payors’ Act to prevent any village from falling into such a plight.
The invalidity of contracts and assessment is claimed to result from three facts :
1. That the individual defendants acted without taking the oath of office prescribed.
3. That the assessment roll of 1883, used in the election referred to, was invalid, and avoids the election.'!
3. That at the election, votes were improperly received and excluded.
Let it be conceded that the oath which the defendants took and subscribed was an idle ceremony because it was administered by an officer lacking authority ; nevertheless, these gentlemen took possession of the office, and the public have acquiesced in their claim and tenure. They are, therefore, officers defacto, and competent to lay an assessment.
Judge Cooley, writing on taxation, defines an officer *166 defacto “to be one who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law” (Cooley on Taxation, 185). “The public acquiescence and reputation attach certain important consequences to his occupation of the office which the interest of the State does not permit to depend upon his own motives or the degree of plausibility which attaches to his claim.” “It has sometimes been urged that in tax proceedings there was no proper room for the application of the doctrine, which is applied in other cases in support of action by officers de facto; that the proceedings are summary and for the most part ex parte; that they may deprive the owner of his freehold by means of process which usually and perhaps necessarily is somewhat arbitrary, and that he is therefore entitled of right to have all the security, which the law has intended he- should have; in the character and standing of an officer duly and properly chosen for the particular duty; in the official oath of such officer, when one is required by law; in the official bond if one is made necessary; and indeed such security as would be afforded by a strict compliance with every provision which hás been imade by the revenue laws for the protection of taxpayers. The reasons are plausible, but they are not very conclusive. . Indeed, if official action of officers defacto in judicial positions can be sustained, as often it has been, though not only property but also liberty may depend upon it, it is difficult to suggest any distinguishing reason to remove tax cases from the application of the same principle. The clear and very strong preponderance of authority is, that the general policy of the law requires the acts of officers de facto to be sustained in tax cases under the same circumstances and on the same reasons that sustain them in others” {Id. 190.)
The case of Merritt v. Village of Portchester (71 *167 N. Y. 309) is cited by the plaintiff, and is opposed to the doctrine of Judge Cooley’s treatise.
Several years later the same court, with many members still sitting, decided the matter of the petition of Kendal (85 N. Y. 302). This proceeding was to vacate an assessment because commissioners to examine all such contracts in New York, and who certified that this one was free from fraud, had failed to take the oath of office. The assessment was held valid as the act of officers de facto.
“It would be a monstrous proposition,” writes Judge Earl, “ to hold that the action of town assessors or of trustees of villages, who, under the general village act, perform the duties of assessors, was void because they had neglected to take any official oath. It is no answer to the validity of the action of these commissioners as de facto officers, that their action could result in taking private property for assessments which might be consequent upon their action.”
These decisions are reconciled by the reflection that the commissioners of estimate and apportionment in the Portchester case were not public officers, while the commissioners in the matter of Kendal, were.
Judge Platt, in Matter of Attorneys (20 Johns. 493), defined office to be “ an employment on behalf of the Government, in any station or public trust not merely transient, occasional or incidental.” Tried by this test, the commissioners in the Portchester case fall outside the definition of office. Their employment was transient, and incidental to the larger scheme which the trustees of that village were conducting. On the other hand, the commissioners in the Kendal case were appointed by the Legislature to examine every public improvement in New York city for which an assessment, had been laid, and certify whether each was free from fraud. These commissioners were public officers„.
*168 There is another test. The appointment of commissioners of estimate and apportionment has from time to lime been entrusted to the courts by the Legislature, and no question made of the constitutionality of the practice. Yet the constitution forbade the Legislature to entrust to the courts' appointment to public office (Const. 1846, art. 6, § 8). Such officers as the courts can appoint are not public officers (Matter of Hathaway, 71 N. Y. 238, 242).
The Portchester commissioners, like referees, commissioners of appraisal, and the like, are not public officers, and could not claim to be defacto officials. On the contrary, the commissioners in the Kendal, and the village trustees in this case, are public officers, and can claim de facto powers (People ex rel. Garmo v. Bartlett, 6 Wend. 422).
It is a canon of election law that irregularities which would not change the result will not be rectified in the courts (Dillon on Mun. Corp. 2d. ed. § 197, n. 3). This disposes of the irregularities complained of in this case, for it is not pretended that the vote would have been adverse to the introduction of water into Irvington had all the disputed votes gone against it. If the election was irregular, certiorari is the plaintiff’s remedy.
It is alleged that the assessment roll of 1882 was made by officers who had not qualified, and contains names* not properly on it, and omits others which ought to be. Those defects cannot be inquired into collaterally.
Judgment should be for the defendants, dismissing the complaint upon the merits, with costs, and with leave to try the remaining questions in issue.