Several objections are presented by the respondent's counsel to the granting of the mandamus prayed for, which I will consider in their order.
He insists first that "the State does not owe the relator $20,000, and she had no right to demand a warrant for that sum until she had complied with a condition precedent, to wit, until she had procured the certificate of the three persons designated by the legislature," etc.
Procuring the certificate required by the statute is very clearly a condition precedent to any right to the money. If the relator has not obtained it she has no right, and of course can demand no remedy.
In the second place, he insists that the certificate of two of three persons designated is not a compliance with the statute, neither at common law nor under the general act on that subject.
The statute making this appropriation is as follows: *Page 481 
"To Mrs. Lewis W. Washington $20,000 or so much thereof as may be necessary for the purchase of certain relics of General George Washington, offered by her to the State, to be paid only upon the certificate of Martin Grover and the chancellor of the university, and J. Carson Brevoort; that the said relics are, in their opinion, genuine; and that it is desirable, in their judgment, that they should be placed in the museum of the State library."
In my judgment, by the well-settled rule at common law, this power would have been legally exercised by the signature of two of the three to the certificate when all three had assembled to pass upon the question.
The only answer specially urged against this rule is that it solely applies "to matters of public concern;" that "as to matters of private concern," as this is claimed to be, all must join to make a valid execution of the power.
Grindley v. Barker (1 Bos. Pul., 220) is in point as to the general rule.
EYRE, Ch. J., there said: "I think it is now pretty well established, that where a number of persons are intrusted with powers not of mere private confidence, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole."
In that case six persons had been appointed, pursuant to an act of parliament, as "searchers," to examine and determine whether tanned hides, etc., offered for sale in certain places, were properly dried, etc. Four condemned them, and the other two refused. Held, by the opinions of all the judges, that this must be considered as the condemnation of all six. (See the cases there cited.)
It is scarcely necessary to cite authorities, as the general doctrine is hardly denied.
Then is this a matter of private concern? We are all of opinion it is not. The cases referred to by the respondent cannot fail to establish his doctrine. They hold that arbitrators, to determine controversies between individuals, *Page 482 
are engaged in matters of private concern. (Green v. Miller,
6 J.R., 39.) But where appraisers act between individuals and the State, it is matter of "public concern," and a majority act as the whole, when all have met. (Ex parte Rogers, 7 Cow., 526, 529.)
In the case at bar the legislature desired to purchase, upon certain terms, what they regarded as of interest and value to the public. It was a question between an individual and the State. This would seem, then, to be plainly matter of public concern. This certificate, therefore, would have been legally given at common law when signed by a majority. But, irrespective of the common law, the provision of the Revised Statutes, in my opinion, embraces this case. It enacts that "whenever any power, authority or duty is confided by law to three or more persons, and whenever three or more persons or officers are authorized or required by law to perform any act, such act may be done, and such power, authority or duty may be exercised and performed, by a majority of such persons or officers upon a meeting of all the persons or officers authorized or empowered, unless special provision be otherwise made." (2 R.S., 555, § 27.) The counsel insists that "provision is otherwise made" in the statute making this appropriation. He lays stress upon the repetition of the conjunction "and" in requiring the certificate of "M. Groverand the chancellor and J.C. Brevoort." That thus the legislature intended to say that the certificate of a majority should not be enough. No such intent can be drawn from this nice verbal criticism. If the peculiar construction of the sentence have any special meaning, it would rather seem that the word "and" was inserted after the name of "M. Grover" to prevent the inference, otherwise plausible, that M. Grover was the "chancellor." It is certainly a very strained construction to say that this supernumerary or superfluous "and" makes "the special provision otherwise" required to take this case out of the general rule declared in the statute, that a majority can well execute the act. *Page 483 
The counsel emphasizes the words, in "their" opinion and in "their" judgment, in reference to the contents of the certificate, as making the "special provision otherwise," alluded to in the general act. There is no force in these words for the purpose claimed. The general rule is, let it be observed, that a power, authority or duty for three or more may be exercised by a majority, unless "special provision be otherwise made." The act in the appropriation here uses apt words, and nothing more, for authorizing the power. Like words, substantially, were used in the statute in Grindley v. Barker, and in ex parte Rogers
(supra); but they did not change the rule. It is difficult to conceive how any other words could have been used with more propriety, if they had for their sole purpose the granting of this power to the three persons generally, without any declaration as to the number required for its exercise.
Had the statute used the word "his," instead of "their," so that it should read, "to be paid only upon the certificate of M. Grover and the chancellor and Brevoort that said relics are, in `his' opinion, genuine, and that it is desirable, in `his' judgment, that they should be placed in the State library," it is plain that there would be more plausibility for believing that the act intended each one to give his opinion; and that it did not require or contemplate the uniting of all or their joint certificate. The statute declaring a majority to be sufficient was intended to apply, as it says, to cases where authority is conferred upon three or more to do an act, without making "special provision" whether all shall be necessary, or a majority will be sufficient to its proper execution. That is this case. There is not a line or a word in this act of appropriation that states whether all shall join in the certificate in order to have the power properly exercised, or whether a majority shall be sufficient. In such case, a majority is sufficient, and the certificate by the majority is, in judgment of law, the certificate of the whole. The words, in "their" opinion and in "their" judgment, are apt and proper to describe the acts to be done by the three *Page 484 
What other word could be used in place of "their?" The act to be done is well and aptly described. The act authorizes these three gentlemen to do it. It does not specify or assume to specify how it shall be done, or whether the certificate of a majority shall or shall not be sufficient. In such case the act is express that the signature of a majority is sufficient. The certificate of a majority is "their" judgment — "their" opinion — as the act requires. Had the legislature intended otherwise, they would have said so in plain language; they would have given something more than this superfluous "and," upon which to base so large an inference.
If this declaratory statute does not apply to this case, human ingenuity can scarcely imagine one where it could be applicable.
These are all the objections presented by the respondent's counsel.
One of my brethren, however, intimates the opinion that he was a judge of this court and his appointment to this position was void; that it was a violation of the Constitution, which prohibits a judge of this court from holding any other "office or public trust." (Const., art. 6, § 10.)
Clearly the judge must have changed his mind, and I agree with his first and better opinion. Had he supposed that this was an "office or public trust," of course he would not have assumed to act. He would not have attempted to "hold" another office. But he did act without any declared limitation or doubt. He acted in the matter when he met with his colleagues, examined the "relics," and refused to recommend their purchase quite as much as his colleagues, who expressed a different opinion and came to a different conclusion.
The strength of this objection is much diminished by the fact that the able counsel for the respondent, though in great need of aid, as the case shows, could see no force whatever in this ground of objection, and hence entirely omitted it in his points.
Office has been defined to be "an employment on behalf of the government in any station or public trust not *Page 485 
merely transient, occasional or incidental." (Pr. PLATT, J., Inthe Matter of the oaths to be taken by Attorneys, etc., 20 J.R., 493.) The court held that attorneys and counselors were not officers, within the meaning of the Constitution of 1821, which ordained that no other oath, etc., should be required as a qualification for "any office or public trust."
Burrill says, "the idea of an office clearly embraces the idea of tenure, duration, fees or emoluments, rights and powers, as well as that of duty," and he cites several authorities. He says the intrinsic meaning of the word is well expressed by the old English word "place;" and the figurative terms "incumbent," "swearing in," "entering upon," "vacating," constantly applied to offices, have the same radical idea.
Either of these terms is entirely foreign to the exercise of the authority conferred upon these gentlemen. (2 Burrill L. Dict., 766; see, also, Sheboygan Co. v. Parker, 3 Wall., 93;Vaccari v. Maxwell, 3 Blatch., 368.)
It is very plain that the doing of such an act, a single act like this, is not within the meaning of the constitutional prohibition against "holding" any "other" office or public trust.
As to the other objection of my learned brother, that this declaratory act (2 R.S., 555, § 27) has no application, because here no provision is made for a board, for a meeting of the three, which that act required, that in fact the separate certificate of each person would have been as valid as the joint certificate of all, the first answer is that that act is not confined to a "board," though all must meet to give validity under its provisions to the act of a majority. It contemplates the meeting of all, as this act does. Second. It is plain that this act of appropriation contemplates the meeting of all. The certificate of each one separately would not be "their" certificate; it would not be "their" opinion or "their" judgment. (See Ex parte Rogers, supra, and note.) Upon what conceivable ground the courts below refused this relief it is impossible to imagine. They gave no opinion, and the judge at Special Term gave the case so little consideration as to *Page 486 
decide it upon the argument. It was probably supposed that the cause would come here, and hence the application was formally denied.
The courts have nothing whatever to do with the policy or expediency of this act. Its validity being conceded, we discharge our duty when we declare its legal meaning.
The act having been complied with, the order of the Supreme Court should be reversed and the peremptory mandamus ordered to issue.