THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
v. JAMES C. DUANE, Defendant.

*Aqueduct commissioner — appointment of, under chapter 584, Laws of 1888 —
retired U. S. army officer, eligible — United States Revised Statutes, secs. 1094, 1259.*

Under the provisions of chapter 584 of the Laws of 1888, relating to the appointment by the mayor of the city of New York of aqueduct commissioners, who "shall hold no other federal, State or municipal office, except the office of notary public or commissioner of deeds," an officer in the United States army, who, having attained the age of sixty-four years, has been retired from active service under the provisions of the act of congress, is eligible to appointment as an aqueduct commissioner.

While, under section 1094 of the Revised Statutes of the United States, the army, in part, is made to consist of "the officers of the army on the retired list," and the defendant was nominally an officer of the army, yet as, under the act (chap. 584 of 1888), it is not declared that no officer, Federal, State or municipal, shall be appointed an aqueduct commissioner, but only that the person so appointed shall hold no other Federal, State or municipal office, a mere officer of the army, not, in fact, holding an office, is not ineligible for appointment by the mayor as an aqueduct commissioner. (Van Brunt, P. J., dissenting.)

The eligibility to appointment as an officer of the Soldiers' Home, under section 1259 of the United States Revised Statutes, does not render such officer ineligible to the position of aqueduct commissioner.

*United States* v. *Tyler* (105 U. S., 244) distinguished.

Controversy submitted without action under section 1279 of the Code of Civil Procedure.

From the submission it appeared that James C. Duane was, in the year 1886, appointed by the president of the United States, by and with the advice and consent of the Senate of the United States, to the office of chief of engineers, United States army, with the rank of brigadier-general. The office of chief of engineers of the United States army is an office of distinct, peculiar and manifold duties. On June 30, 1888, James C. Duane was retired from active service by operation of law under the provisions of the Act of Congress of June 30, 1882, and pursuant to that act a special order was issued on that day by the secretary of war announcing General Duane's retirement. His successor in the office of chief of engineers, United States army, was subsequently appointed by the president, by and with the advice and consent of the Senate of the United States. James C. Duane thereupon became and thereafter continued to be

one of the officers of the army, on the retired list, of the class of men mentioned in section 1094 of the Revised Statutes of the United States, one of the classes of which the army of the United States is composed. As such retired officer, under section 1259 of the Revised Statutes of the United States, he might be assigned to duty at the Soldiers' Home upon a selection by the commissioners of that institution approved by the secretary of war.

*Charles F. Tabor,* attorney-general, and *D. J. Dean,* for the plaintiff.

*James C. Carter* and *Edward Winslow Paige,* for the defendant.

Daniels, J.:

In August, 1888, the defendant was appointed by the mayor of the city of New York to be one of the aqueduct commissioners under chapter 584 of the Laws of 1888, and he entered upon the discharge of the duties of that office and has acted as such since that time. Prior to his appointment, and in the year 1886, he was appointed by the president of the United States, by and with the advice and consent of the senate, to the office of Chief of Engineers in the United States army, with the rank of brigadier-general. In June, 1888, he attained the age of sixty-four years, and on the thirtieth of that month he was retired from active service under the provisions of an Act of Congress approved in 1882. He then left the city of Washington, his previous residence, and removed to the city of New York, and has since that time performed no service for the United States, and has in no manner exercised the functions or discharged the duties of that office. But on the 6th of July, 1888, the President of the United States, by and with the advice and consent of the senate, appointed another person to the office of Chief of Engineers in the United States army, with the rank of brigadier-general. He entered upon the discharge of the duties of that office and still continues to discharge the same. And there is but one Chief of Engineers in the United States army, and but one brigadier-general in the corps of engineers in the army, and there has been but one since the year 1885. What the defendant has done since his retirement is to draw three-fourths of his preceding salary as a retired officer of the United States army. And as such

officer he has been entitled to wear the uniform of the rank on which he was retired, and his name has continued to be borne on the army register, subject to the rules and articles of war, and to trial by court martial for any breach thereof. And in support of the plaintiff's case it is affirmed that it has been established by these facts that he was ineligible for appointment to the office of aqueduct commissioner under section 1 of chapter 584 of the Laws of 1888, on the ground that he held a federal office.

By this act the mayor, the comptroller, and commissioner of public works, and four competent persons who should be appointed by the mayor, were directed to carry out the provisions of the act, and were to be known as the Aqueduct Commissioners. And it is provided in the act that the four commissioners to be appointed by the mayor " shall hold no other Federal, State or municipal office, except the office of notary public or commissioner of deeds." By section 1094 of the Revised Statutes of the United States the army, in part, is made to consist of " the officers of the army on the retired list." And from this, as well as other sections of the statute to be hereafter referred to, it is plain that the defendant was nominally an officer of the army at the time of his appointment by the mayor to the office in question. But it does not follow from the circumstance alone that he remained after the fact of his retirement, an officer of the army, that he was ineligible for the appointment made by the mayor, for the act has not declared that no officer, Federal, State or municipal, etc., should be appointed an aqueduct commissioner. It has done no more than to declare that the person shall hold no other Federal, State or municipal office, etc. And the case, accordingly, cannot be maintained upon the fact that he remained an officer of the army after his retirement, but to justify that result it must appear that he held another office. If a mere officer of this, or any other description, not, in fact, holding an office, was intended to be rendered ineligible for the appointment by the mayor, the language employed to express that intention would have been differently selected. The act would necessarily have been broader in the statement of this prohibition. What was intended by the legislature was that no person holding another office should be eligible for the position of aqueduct commissioner, for the reason that the incumbent of another office would necessarily have his time and attention,

to a certain extent, at least, diverted from the office to which this appointment has been made. And it was evidently the policy of the law that no person should be selected by the mayor having other duties to perform preventing him from giving his sole and undivided attention to those of aqueduct commissioner. The simple position of being an officer, without at the same time being invested with the functions of an office and having official duties to perform, would in no manner interfere with the full and complete discharge of the duties of aqueduct commissioner. And for that reason would not be within the intent or spirit of the act of 1888. That act has required, to render the individual ineligible, not merely that he shall be an officer as the defendant was after his retirement, but that he shall hold some other office except that of notary public · or commissioner of deeds. And to hold an office is to be vested with the power and duty " to execute a public or private trust, and to take the emoluments belonging to it." (3 Kent [7th ed.], 560.) And that has been repeatedly sanctioned and maintained by the decisions of the courts. In *Smith* v. *Mayor, etc.* (37 N. Y., 518), it was said that " an office is simply an appointment or authority on behalf of the government to perform certain duties usually at and for a certain compensation." (Id., 520.) And in *People ex rel. Washington* v. *Nichols* (52 N. Y., 478) this was again, but not in the precise language, repeated by the court. For an office was there defined to be " an employment on behalf of the government in any station or public trust, not merely transient, occasional or incidental." (Id., 484, 485.) And this definition of an office was approved of and sanctioned in *United States* v. *Hartwell* (6 Wall., 385). It was there said that " an office is a public station or employment conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument and duties." (Id., 393.)

This, however, was not the condition of the defendant at the time when he was appointed an aqueduct commissioner, for he had been retired from active service as an officer of the United States army. This was done under section 1244 of the United States Revised Statutes, as it was changed as to age by chapter 254, Laws 1882 (22 U. S. St. at Large, 118), declaring when an officer has attained the age of sixty-four years he may be retired from active service at the discretion of the president. And by section

1254 of the same statute is has been further declared that officers retired from active service shall be retired upon the actual rank held by them at the time of retirement. And by the next section that officers retired from active service should be withdrawn from command and from the line of promotion. And when so retired from active service it is declared by section 1257, that " the next officer in rank shall be promoted to his place, according to the established rules of the service." And by section 1259 it is further enacted that " retired officers of the army may be assigned to duty at the Soldiers' Home, upon a selection by the commissioners of that institution, approved by the secretary of war, and a retired officer shall not be assignable to any other duty." Beyond that, the officer upon his own application may also be detailed to serve as professor in any college. These latter provisions are without special importance in this case, for the defendant at no time has either applied for or been selected to serve as professor in any college. Neither has he been asssigned to duty at the Soldiers' Home. Nor could he have been, as the offices of that institution has been filled by other persons since his retirement. By section 4816 of the United States Revised Statutes it has been declared that the officers of the Soldiers' Home shall consist of a governor, deputy governor, a secretary for each separate site of the home, the latter also to be its treasurer. And that these officers should be taken from the army and appointed or removed from time to time as the interests of the institution may require, by the secretary of war, on the recommendation of the board of commissioners. These provisions no further affected the defendant than to render him eligible to one of these appointments. But this mere eligibility is far from holding another office, which alone renders a person ineligible for appointment to the office of aqueduct commissioner. And by the other sections of the Revised Statutes which have been referred to, it is quite evident that the retired officer is deprived of all the functions of the office previously held by him, and divested of all its authority, and wholly discharged from the performance of all its duties. For it has been declared, not only that he shall be withdrawn from command and from the line of promotion, but, in addition to that, he shall not be assignable to any other duty than that to which he may be assigned at the Soldiers' Home upon the selection

of the commissioners of that institution approved by the Secretary of War. In this condition, as the law has prescribed and defined it, he, in fact, held no office in the army of the United States. He had no duties to perform, no authority whatever to exercise beyond that of drawing his salary, to which the laws entitled him as a retired officer. Permitting him to wear the uniform of the rank on which he was retired, or his name to be retained upon the army register, subjecting him to the rules and articles of war and to trial by general court-martial for any breach of them, invested him with no power or authority, and prescribed no duty for him as an officer, but simply regulated his conduct with the rules prescribed for that purpose by the articles of war. While, by this and other provisions which have been referred to, he did remain an officer in the army, yet it is clear that he held no office. The only office he did hold before his retirement was that of Chief of Engineers of the United States army. There was but one such office. And his retirement, according to section 1257 of the United States Revised Statutes, not only vacated this office, but left the office to be at once disposed of by a succeeding appointment which was required to be made by the selection for it of the officer next in rank to the defendant. From the time of the selection of this officer for the office, it was he, and not the defendant, that held the office, as the term office has been defined by the authorities already referred to. Both this appointee and the defendant could not at the same time hold or occupy the same office. Neither could the appointment which was made to it after the defendant's retirement be made unless the office itself had been vacated by that retirement. When he retired he ceased to hold the office, and his successor afterwards appointed to it, which appointment took place prior to the selection of the defendant as aqueduct commissioner, was the only person who held this office.

The case of *United States* v. *Tyler* (105 U. S., 244) is in no manner in conflict with this result of the statutory enactments which have already been mentioned. For there the simple question was whether a retired officer was still in the military service of the United States so as to become entitled to the ten per cent mentioned and allowed in sections 1262 and 1263 of the Revised Statutes. And it was held that he was. But it was an obvious oversight to say, as was

said in the case, that a retired officer might still be assigned after his retirement to such duty as the laws and regulations permitted. For the reason that the statute, in express words, has declared that a retired officer shall not be assignable to any other duty than those of an officer of the Soldiers' Home after he has been actually selected for that purpose, with the approval of the Secretary of War. The case of *Badeau* v. *United States* (130 U. S., 439) in no way affects the eligibility of the defendant for the office of aqueduct commissioner. The facts upon which it proceeded were entirely different from those now presented, and its disposition depended upon other statutory enactments by Congress. And equally as inapplicable is *Matter of Tyler* (18 Court of Claims, 25), for it was decided upon the disability attaching to the officer himself under section 5498 of the United States Revised Statutes, and not upon the fact of his being the incumbent or holder of an office.

It may be somewhat anomalous to designate a person as an officer who, in fact, has no office, but that seems to be the result of the Congressional enactments on this subject. For the officer retired from active service is still retained as an officer of the army, but deprived of all the authority, powers and duties appertaining to his office. And so completely has this been declared to be the effect of his retirement that he is thereby withdrawn from his command, and is assignable to no other duty than that of an officer of the Soldiers' Home upon his proper selection for that purpose, and his office is so effectually vacated that his successor is required to be promoted to his place. And that successor was, in fact, actually selected and invested with the office upon the defendant's retirement. And it follows from these provisions of the statute, and also from the accepted definition and description of an office by the authorities, that when the defendant's appointment to the office of aqueduct commissioner took place he did not hold any other office, Federal, State or municipal. And the result is that judgment should be directed in his favor, with costs.

BARRETT, J. :

There is no doubt that General Duane is still in the military service of the United States. His connection with the army continues,

and although he is relieved from present duty, Congress may at any time recall him to active service. Still his position is very much that of a public servant who has been retired upon a pension. His reduced pay is given as a reward for past services; and he is kept nominally in the army not with a view to actual duty, but that he may be under control and discipline. Thus the enjoyment of what amounts to a pension is made to depend upon continuous good behavior. For he is still in the service and can be dismissed from such service for conduct unbecoming an officer and a gentleman. Clearly, then, he is still an officer, though retired from active service, and as such distinguished by the Federal statutes, in several important particulars, from officers wholly retired from the service. The question here, however, is not (as it was in *United States* v. *Tyler*, 105 U. S., 244), whether he is nominally in the military service and entitled as such to what is called longevity pay, but whether he holds a Federal office within the letter or spirit of chapter 584 of the Laws of 1888.

The question is a close one, but, upon full consideration, I am inclined, though not without hesitation, to agree with Mr. Justice DANIELS. If the letter of the act of 1888, as earnestly contended for by the people, is to govern, I agree that there is only one federal office in question, and that that office is held, not by General Duane, but by his successor, General Casey. General Duane is simply an officer without an office — so declared by law. But I cannot think that the spirit of the act and the mischiefs aimed at are to be ignored. Nor should the rule of strict construction with regard to disqualifying statutes be disregarded. Looked at from these points of view, we cannot give this act a construction so narrow as to deprive the city of some of the best engineering service at its command. Nor can we ascribe such an intention to the legislature. The real object of the provision under consideration was doubtless to prevent the holding of two distinct offices by one person, and to require the appointment to these commissionerships of men who would give their undivided attention to the duties of the position.

General Duane's situation under the Federal statutes is such that *he can* give his whole time and attention to the aqueduct service as fully and freely as though he was not borne upon the army register. He may possibly, it is true, be assigned to duty at the Soldiers' Home,

and such assignment may be independent of his will. So, possibly, he may be assigned to active duty by Congress. But he has not been assigned to any such duty. When he is, it will be time enough to say to him — you *now* hold a federal office which is incompatible with the exclusive service due to the municipality. Even the duty to be performed at the Soldiers' Home would be, in a certain sense, the holding of a new and independent office. For the only duty to be performed at the Home is the holding there of one of three offices— governor, deputy governor or secretary; and while such duty is called for by the military *status*, it is not a strictly military duty.

The essence of office is duty, and while a person may be retained in a military or governmental system as a legal appendage, either as an honor to the individual or for some special purpose of control, yet he cannot be said to hold an office, in any genuine or vital sense, when there is no duty attached to the situation and the officer is required to render no service.

My best judgment upon the whole is, that the federal office contemplated by the act of 1888 is an office to which there is attached some active duty, the performance of which might interfere with the adequate discharge of the holder's duty to the municipality.

VAN BRUNT, P. J. (dissenting):

I cannot concur in the conclusions arrived at by Mr. Justice DANIELS and Mr. Justice BARRETT. It seems to me that the United States statutes and the decisions of the United States Supreme Court should be conclusive as to the status of a person who because of his official position is drawing a salary from the treasury of the Federal government.

The Revised Statutes of the United States (§ 1094), expressly declare that the defendant is a part of the army of the United States because he holds a commission as an officer of the army on the retired list.

The United States Supreme Court, in the case of *United States* v. *Tyler* (105 U. S., 245), expressly held that officers on the retired list still remain in the military service of the United States, and because they are still in such service are entitled to the longevity pay allowed by section 1262 of the Revised Statutes of the United States. The defendant holding a commission as an officer in the

army of the United States, and being still in the military service, and being entitled to pay from the Federal treasury because he holds such commission and is in such service, certainly holds a Federal office just as much as he would if he had never been retired. The contrary view repeals the statute and reverses the decision of the Supreme Court of the United States it seems to me. Furthermore, the Consolidation Act (Laws 1882, chap. 410, § 55) provides as follows:

"Any person holding office, whether by election or appointment, who shall, during his term of office, accept, hold or retain any other civil office of honor,. trust, or emolument, under the government of the United States (except commissioners for the taking of bail, or register of any court) or of the State (except the office of notary public or commissioner of deeds, or officer of the national guard) or who shall hold or accept any other office connected with the government of the city of New York, or who shall accept a seat in the legislature, shall be deemed thereby. to have vacated every office held by him under the city government."

Under this statute officers of the army of the United States on the retired list or otherwise could be employed by the city government because they hold no civil office, the office which they did hold being a *military* one, and not a *civil* one.

The language of the act whereby the aqueduct commissioners were appointed is strikingly different, and it provides that such commissioners and their successors shall hold no other Federal, State or municipal office except the office of notary public or commissioner of deeds. Not no other civil office as in the Consolidation Act, but no other office whatever, civil or military. It would seem that the legislature intended that an aqueduct commissioner should have no. connection whatever with the Federal, State or municipal government except such as arose from the office as Aqueduct Commissioner.

The defendant, therefore, being an officer in the army of the United States, and entitled to pay as such, and being in the military service of the United States, as determined by the United States Supreme Court, was not eligible to the office of Aqueduct Commissioner.

Judgment directed in favor of the defendant, with costs.