The People of the State of New York ex rel. Samuel M. Welch, Respondent, *v.* Franklin E. Bard, Individually and as Treasurer of the County of Erie, et al., Appellants.

Military Law — justices of the Supreme Court — constitutionality of statute authorizing a justice of the Supreme Court, in case of tumults, riots and other breaches of the peace, to call upon commanders of the National Guard for aid to suppress such disturbances — mandamus, directing payment of troops ordered out pursuant to such call, should be issued.

1. A right of review by appeal is not an essential element of due process of law.

2. Whenever the law vests in an officer or magistrate a right of judgment and gives him a discretion to determine the facts on which such judgment is to be based, he necessarily exercises, within the limits of his jurisdiction, a judicial authority.

3. Under the statute (Military Law, § 115; Cons. Laws, ch. 36) a justice of the Supreme Court may, in case of any breach of the peace, tumult, riot or resistance to process of this state, or imminent danger thereof, within any city or county of the state, call for aid upon the commanding officer of the National Guard or Naval Militia stationed therein or adjacent thereto. Such provision is not violative of that provision of the State Constitution (Art. 4, § 4) which makes the governor the commander-in-chief of the military forces of the state, or of that (Art. 6, § 10) which prohibits justices of the Supreme Court from holding any other office or public trust; and mandamus lies to the county treasurer to provide for payment of troops when ordered out under such call.

*People ex rel. Welch* v. *Bard*, 157 App. Div. 943, affirmed.

(Argued June 20, 1913; decided October 21, 1913.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 12, 1913, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel defendant as county treasurer to execute certificates of indebtedness to provide for the payment of troops

called forth in aid of the civil authorities by a Supreme Court justice.

The facts, so far as material, are stated in opinion.

*Thomas A. Sullivan* for appellants. Section 115 of the Military Law of the state of New York is unconstitutional and void. Each of the three departments of government is restricted to the exercise of its own legitimate functions; and unless a legal and constitutional warrant can be found, no one of the three shall be permitted to invade the domain of the others. (*People ex rel. Sabold* v. *Webb,* 23 N. Y. 329; *People ex rel. Busby* v. *Howland,* 155 N. Y. 270; *People ex rel. Broderick* v. *Morton,* 156 N. Y. 143; *People ex rel. MacDonald* v. *Leubischer,* 34 App. Div. 577; 54 N. Y. Supp. 869.) Section 115 of the Military Law imposes upon a justice of the Supreme Court the power and duty of calling for aid upon the military authorities in case of any breach of the peace, tumult, riot or resistance to process of this state, or imminent danger thereof, and when he exercises that power, puts such troops as respond to his call under his command and direction, and gives him the power and discretion, without any review, of determining the duration of their service and the duties which they are to perform. If this power and authority is a public trust, then it contravenes the provisions of section 18 of article 6 of the Constitution and is void. (*Matter of Wood,* 2 Cow. 29; *People* v. *Hall,* 169 N. Y. 184; *Ayburn's Case,* 2 Del. 409; *Matter of Attorney-General,* 21 Misc. Rep. 101; *Supervisors* v. *Briggs,* 2 Denio, 33; *Matter of Cooper,* 22 N. Y. 67; *Matter of Hathaway,* 71 N. Y. 249; *People ex rel. Scheu* v. *McWilliams,* 185 N. Y. 95; *People ex rel. Toms* v. *Bd. of Suprs.,* 199 N. Y. 154; *Muhlenberg Co.* v. *Moreland,* 49 S. W. Rep. 484; *Flemming* v. *Dyer,* 47 S. W. Rep. 444.) It is urged that as the orders under which the services were rendered were military in their

nature the officers and members of the Fourth Brigade must necessarily obey them. That is not so. An officer or soldier is not bound to obey an unlawful command, and he does so at his own risk and cost. (*United States* v. *Barreme*, 2 Cranch [U. S.], 170; *United States* v. *Carr*, 1 Wood [U. S.], 480; *Matter of Mulligan*, 4 Wall. 120.)

*Louis L. Babcock* for respondent. The order for aid made by Mr. Justice BROWN is not assailable collaterally, and is conclusive as to the existence of the facts therein recited. (*Ela* v. *Smith*, 5 Gray, 121; *Piper* v. *Pearson*, 2 Gray, 120; *Clarke* v. *May*, 2 Gray, 410; *City of Salem* v. *R. R. Co.*, 98 Mass. 444; *Martin* v. *Mott*, 12 Wheat. 19; *Appeal of Hartranft*, 85 Penn. St. 444.) The reposing in a Supreme Court justice of the power to make an order of this character is not repugnant to article 6, section 10, of the State Constitution. (*Rex* v. *Pinney*, 5 C. & P. 254; *People ex rel. Lawrence* v. *Mann*, 97 N. Y. 530; *Matter of Steinway*, 159 N. Y. 250.) The delegation of power to a Supreme Court judge to call out the National Guard is not the exercise of another office or public trust within the meaning of the Constitution. (*People ex rel. Washington* v. *Nicolls*, 52 N. Y. 478; *People* v. *Hall*, 169 N. Y. 195; *Matter of Davies*, 168 N. Y. 102.)

WILLARD BARTLETT, J.   The relator is the brigadier-general commanding the Fourth Brigade of the National Guard of the state of New York, whose headquarters are in Erie county. On the 8th day of April, 1913, the Hon. CHARLES H. BROWN, one of the justices of the Supreme Court in the eighth judicial district, caused to be served upon General Welch the following communication in writing:

"*To Brigadier-General Samuel M. Welch, Fourth Brigade, National Guard, State of New York:*

"SIR.— Whereas I am satisfied that breaches of the peace, tumults, riots, and other violations of the law are

almost continually occurring within the City of Buffalo, Now, therefore, I, Charles H. Brown, Justice of the Supreme Court of the State of New York, by virtue of the authority vested in me under the Military Law of the State of New York, do hereby call upon you for aid in the suppression of such breaches of the peace, tumults and riots.— Dated April 8, 1913

" (Signed)
" CHARLES H. BROWN,
" *Justice of the Supreme Court.*"

In compliance with this call for aid, General Welch assembled three regiments of his command in Buffalo for riot duty, and they remained there engaged in active service from the 9th to the 12th day of April, 1913, when they were relieved from further duty in the premises pursuant to a written direction from Mr. Justice BROWN addressed to General Welch on the last-mentioned date. The present proceeding was instituted to compel the county treasurer of Erie county to execute a certificate of indebtedness, under section 211 of the Military Law, to provide for the payment of the troops thus called out. Their payrolls amounted in the aggregate to $19,999.55.

The claim is resisted on the ground that the action of Judge BROWN was violative of two provisions in the State Constitution : (1) That which makes the governor the commander-in-chief of the military forces of the state (Art. IV, § 4); and (2) that which prohibits justices of the Supreme Court from holding any other office or public trust (Art. VI, § 10).

As to the first ground, it should be observed that Judge BROWN did not undertake any of the functions of a military commander. The statute empowered a justice of the Supreme Court in a given emergency to call for aid; and finding the emergency to exist, he called for it. " In case of any breach of the peace, tumult, riot or resistance

to process of this state, or imminent danger thereof, a justice of the supreme court, a county judge or recorder, or city judge of a city or sheriff of a county, or mayor of a city, may call for aid upon the commanding officer of National Guard or Naval Militia stationed therein or adjacent thereto; such call shall be in writing." (Military Law, § 115; Cons. Laws, ch. 26.) All that Judge BROWN did was to set the military branch of the government in motion, to assist in the suppression of a riot, after judicially ascertaining the fact that rioting was going on in the city of Buffalo. In no proper sense, as it seems to me, can his action be deemed a usurpation of the constitutional prerogatives of the governor as commander-in-chief. The call was not even in the form of an order; it contained no directions as to what troops were to be assembled, or how many, or where. It merely declared that a condition existed which military assistance was needed to suppress; and it requested that such assistance be afforded. This is very far from the exercise of military command. That remained in the hands of Brigadier-General Welch, subject at all times to the control of the governor, who was informed of the call and all that was done thereunder.

Section 10 of article VI of the Constitution provides that the judges of the Court of Appeals and the justices of the Supreme Court shall not hold any other office or public trust. The judicial construction given to this constitutional prohibition shows that it does not forbid the legislature from conferring upon a Supreme Court justice authority to issue such a call for military aid to suppress a riot as was issued in the present case. It does not prohibit the exercise of a function which is "merely transient, occasional or incidental." (*People ex rel. Washington* v. *Nichols*, 52 N. Y. 478.) Thus in the case cited it was held that a judge of the Court of Appeals might be empowered to pass upon the genuineness of certain relics of General Washington, with a view

to their purchase by the state. The performance of administrative duties as to matters incidental to the exercise of judicial powers or which have some reasonable connection with a judicial purpose has repeatedly been sanctioned. (*Matter of Davies,* 168 N. Y. 89, 102; *People* v. *Hall,* 169 N. Y. 184; *Citizens' Savings Bank* v. *Town of Greenburgh,* 173 N. Y. 215, 228.) The ascertainment by Mr. Justice BROWN of the fact that breaches of the peace, tumults, riots and other violations of the law were almost continually occurring in the city of Buffalo on the 8th day of April, 1913, was the exercise of a judicial power. A statute similar to ours was considered by the Supreme Judicial Court of Massachusetts in *Ela* v. *Smith* (5 Gray, 121). It provided that the mayor of a city or a court of record sitting within the county, might, in case a tumult, mob or riot should be threatened and that fact be made to appear, issue a precept to call out a division or smaller body of the volunteer militia to aid the civil authority in suppressing such violence and supporting the laws. "This provision of the statute," said the court, "clearly confers a judicial power. Whenever the law vests in an officer or magistrate a right of judgment, and gives him a discretion to determine the facts on which such judgment is to be based, he necessarily exercises, within the limits of his jurisdiction, a judicial authority." As an objection to the view that Judge BROWN acted judicially in determining that a riot existed in Buffalo, it is suggested that there is no provision for reviewing such determination by appeal; but it may be observed that a right of review by appeal is not an essential element of due process of law — although a contrary assumption is often intimated in the discussion of legal questions. The *Appeal of Hartranft* (85 Pa. St. 433, 444) involved an attempted inquiry by the grand jury of Allegheny county into the action of the governor and other officers of the commonwealth of Pennsylvania in suppressing the great

Pittsburg riots in July, 1877. The law imposed upon the governor the duty of suppressing domestic insurrections; and it was held that he alone was the absolute judge to determine whether or not a condition of things existed demanding the exercise of that duty on his part. " The general principle is, that whenever the law vests any person with the power to do an act, at the same time constituting him a judge of the evidence on which the act may be done   *   *   *   such person is clothed with discretionary powers, and is *quoad hoc* a judge."

Section 211 of the Military Law provides for the payment of the officers and enlisted men of the National Guard when on duty in aid of the civil authorities, and prescribes the manner in which the necessary moneys are to be raised, upon certificates of indebtedness executed by the county treasurer in the name of the county. It is possible that if the .call upon the military arm to aid the civil authorities had been absolutely void in law — as if issued by some officer without the pretense or color of right — these soldiers would have been justified in disregarding the summons to assemble and serve; but in the absence of any reasonable ground for questioning the legality of the command, they were bound to obey it and thereby became entitled to their statutory pay. In reference to a summons by the governor to do riot duty, the Supreme Court of the state of Washington has held that the troops so summoned were entitled to their compensation whether there was reasonable ground for calling them out or not, and whether the call was formally correct or not. (*Chapin* v. *Ferry*, 3 Wash. 386, 397.) Indeed, at common law, the military subjects of the king, equally with his civil subjects, were bound to assist in putting down riots, where the danger was great and the .circumstances were such that a requisition could not be obtained from the proper authorities. (1 Stephen's History of the Criminal Law of England, 203, 204; *Rex* v. *Pinney*, 5 Carrington & Payne, 261.)

The disposition of this case by the courts below was clearly right and the order appealed from should be affirmed, with costs.

Cullen, Ch. J., Werner, Chase, Collin, Cuddeback and Hogan, JJ., concur.

Order affirmed.