In the Matter of the Application of JAMES F. RICHARDSON et al., Appellants.

TOWNSEND SCUDDER, Respondent.

In the Matter of MAURICE E. CONNOLLY, Appellant, against TOWNSEND SCUDDER, a Justice of the Supreme Court, Respondent.

Constitutional law — judges — prohibition — officers — provision of section 34 of Public Officers Law charging justices of the Supreme Court with the duty of acting as delegate of Governor in investigation of acts of public officer invalid — justice may not assume performance of such duties in his private capacity — disqualified while retaining office to act as delegate of Governor — subpœnas issued by justice in such capacity vacated and order of prohibition granted directing him to desist from further action — executive or commissioner appointed by him may be charged with such duties — function of inquisition not divorced from that of hearing and decision by provisions of sections 122 and 382 of New York City Charter providing for hearing before removal of borough President.

1. Section 34 of the Public Officers Law (Cons. Laws, ch. 47), both before and after its amendment by chapter 15 of the Laws of 1928, in so far as it attempts to charge a justice of the Supreme Court with the mandatory performance of duties non-judicial, by making him the delegate of the Governor in aid of an executive act, the removal of a public officer, is invalid. There is no inherent power in Executive

26

or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfillment of judicial duties and the essence of the judicial function may not be destroyed by turning the power to decide into an opportunity to consult and recommend.

2. Nor may a justice of the Supreme Court assume the performance of such duties in his private or individual capacity as if named as a commissioner. Service as commissioner in removal proceedings under section 34 of the Public Officers Law is acceptance of a public trust within the prohibition of section 19 of article 6 of the State Constitution providing that "justices of the Supreme Court shall not hold any other public office or trust, except that they shall be eligible to serve as members of a constitutional convention."

3. A justice of the Supreme Court is, therefore, disqualified, while retaining his office, to act as the delegate of the Governor, either in his official or private capacity, and subpœnas issued by him to witnesses to attend a hearing before him of charges against a public officer, under section 34 of the Public Officers Law, should be vacated and an order of prohibition commanding him to desist from further action in the investigation or hearing of the charges, granted.

4. While the Legislature has no power to charge a justice of the Supreme Court with the duties of a prosecutor in aid of the Executive it may lay such duties on the Executive himself or on a commissioner appointed as his agent or adviser, and neither the one nor the other is subject to supervision of the courts. Nothing in sections 122 and 382 of the Charter of the City of New York (L. 1901, ch. 466), providing that the President of a borough is not to be removed without an opportunity of being heard in his defense, amounts to a direction that in the performance of an executive act, the function of inquisition shall be divorced from that of hearing and decision.

*Matter of Richardson* (*sub nom. Matter of Rice*), 131 Misc. Rep. 220, reversed.

*Matter of Connolly*, 222 App. Div. 591, reversed.

(Argued February 23, 1928; decided March 1, 1928.)

APPEAL, in the first entitled proceeding, on constitutional questions only, from an order of a Special Term of the Supreme Court, in and for the county of Kings, entered January 27, 1928, denying an application to vacate subpœnas.

Appeal in the second entitled proceeding, by permission, from an order of the Appellate Division of the Supreme

Court in the second judicial department, entered February 1, 1928, denying an application for an order of prohibition.

*Joseph S. Frank* and *William H. Robbins* for James F. Richardson, et al., appellants. Section 34 of the Public Officers Law in so far as it empowers the Governor to assign a Supreme Court justice to the duties there specified, conflicts with article 6, section 19, of the State Constitution prohibiting a Supreme Court justice from holding any other public office or trust, and confuses the judicial and executive functions of the State government. (*Matter of Supervisors of Election,* 114 Mass. 247; *Attorney-General* v. *Pelletier,* 240 Mass. 264; *Matter of Wood,* 8 Hopk. Ch. 6; *People* v. *Hall,* 169 N. Y. 184; *Daily Register Printing Co.* v. *Mayor,* 52 Hun, 542; *People* v. *Bard,* 209 N. Y. 403; *Citizen's Savings Bank* v. *Town of Greenburgh,* 173 N. Y. 215; *Matter of State Industrial Comm.,* 224 N. Y. 13; *Interstate Commerce Comm.* v. *Brimson,* 154 U. S. 447; *Matter of Sanborn,* 148 U. S. 222; *Matter of Gordon,* 117 U. S. Appx. 697; *U. S.* v. *Ferreira,* 13 How. [U. S.] 39; *Hayburn's Case,* 2 Dall. [U. S.] 409.) The legislative authorization to the Executive to assign a Supreme Court justice to the duties specified in the act, is also in conflict with article 6, section 2, of the Constitution. (*People* v. *O'Shea,* 147 N. Y. 78; *People* v. *Gillette,* 191 N. Y. 107; *Matter of Reynolds* v. *Cropsey,* 241 N. Y. 389; *People ex rel. Saranac Land & Timber Co.* v. *Supreme Court,* 200 N. Y. 487; *People* v. *Draper,* 15 N. Y. 523; *Rathbone* v. *Wirth,* 150 N. Y. 459; *Matter of Fraser* v. *Brown,* 203 N. Y. 136; *Ford* v. *Clarke,* 204 App. Div. 5; 236 N. Y. 606.)

*Max D. Steuer, Aaron Steuer* and *Ben Herzberg* for Maurice E. Connolly, appellant. Under the statute Mr. Justice SCUDDER is acting only in an advisory capacity. Neither the Legislature nor the Governor can impose the duty on him to render an advisory opinion, as a judge, and article 6, section 19, of the Constitution prohibits

him from acting in this matter in any other capacity. (*United States* v. *Todd,* 13 How. [U. S.] 52; *United States* v. *Ferriera,* 13 How. [U. S.] 39; *Matter of State Industrial Comm.,* 224 N. Y. 13; *Hayburn's Case,* 2 Dall. [U. S.] 409; *Matter of MacFarland,* 30 App. [D. C.] 365; *Divan* v. *Swig,* 223 Mass. 516; *State ex rel. Smith* v. *District Court,* 145 Pac. Rep. 721; *Case of Supervisors of Election,* 114 Mass. 247.) If the statute bestows the power upon the Supreme Court justice individually and not as a judge, it violates article 6, section 19, of the Constitution. (*Seymour* v. *Ellison,* 2 Cow. 13; *People ex rel. Kelly* v. *Common Council of Brooklyn,* 77 N. Y. 503; *Case of Supervisors of Election,* 114 Mass. 247; *State* v. *Chase,* 5 Har. & Johns. 297; *Board of Supervisors* v. *Todd,* 97 Md. 247; *Curtis* v. *Cornish,* 109 Me. 385; *People* v. *Hall,* 169 N. Y. 184; *Matter of Davies,* 168 N. Y. 89; *People ex rel. Washington* v. *Nichols,* 52 N. Y. 478; *People ex rel. Welch* v. *Bard,* 209 N. Y. 307.) The power to conduct an investigation is an administrative and not a judicial function and under the Constitution it may not devolve upon a justice of the Supreme Court. (*Wright* v. *Chicago,* 48 Ill. 285; *Johnston* v. *Chicago, etc., R. Co.,* 130 Wis. 492.) The duty to conduct this investigation and prepare the case for the public hearings is an administrative function. (*People* v. *Dickerson,* 164 Mich. 148; *McQuade* v. *City of Joliet,* 293 Ill. 515.) The removal of a public officer is an executive act. There is no authority for holding that a judge may discharge non-judicial powers in aid of an executive act. (*Matter of Guden,* 171 N. Y. 529; *Matter of Mitchell* v. *Cropsey,* 177 App. Div. 663; *Matter of State Indus. Comm.,* 224 N. Y. 13; *Kilbourne* v. *Thompson,* 103 U. S. 168; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463.)

*Emory R. Buckner, John M. Harlan* and *Herman T. Stichman* for respondent. Mr. Justice Scudder is not holding another public office or trust. (*Gordon* v. *United*

*States,* 117 U. S. 697; *United States* v. *Ferreira,* 13 How. [U. S.] 39; *Matter of Mitchell* v. *Cropsey,* 177 App. Div. 663; *Matter of Davies,* 168 N. Y. 89; *Dunham* v. *Ottinger,* 243 N. Y. 423; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463; *People ex rel. Welch* v. *Bard,* 209 N. Y. 304; *Citizen's Savings Bank* v. *Town of Greenburgh,* 173 N. Y. 215; *People ex rel. Washington* v. *Nichols,* 52 N. Y. 478.) Section 34 does not subordinate the judicial to the executive branch of the government. ( *United States* v. *Ferreira,* 13 How. [U. S.] 39; *Ex parte Gans,* 17 Fed. Rep. 471; *Field* v. *Clark,* 143 U. S. 649; *People ex rel. Welch* v. *Bard,* 209 N. Y. 304; *Kingman* v. *Met. Sewerage Comm.,* 153 Mass. 566.)

CARDOZO, Ch. J.  On December 15, 1927, a citizen of the State filed with the Governor charges against Maurice E. Connolly with a view to his removal from office as President of the Borough of Queens.  On the following day the Governor, by an instrument in writing, which recited the filing of these charges, addressed a direction to a justice of the Supreme Court to hear the charges, and make report to the Governor thereon.  " Pursuant to section 34 of the Public Officers Law, I do hereby direct that Honorable TOWNSEND SCUDDER, one of the justices of the Supreme Court in and for the second judicial district of the State of New York, within which said Maurice E. Connolly resides, take evidence as to said charges with all the powers as by law provided, and I hereby further direct said Justice to report to me said evidence taken in such proceedings with his findings of the material facts deemed by him to be established in connection with said charges, together with his conclusion thereon."  Mr. Justice SCUDDER gave notice to the accused officer on December 30, 1927, that he would take the evidence at the County Court House in Long Island City on February 1, 1928, and at such adjourned hearings as might be from time to time announced.  He signed

the notice with the addition of his official title as Justice of the Supreme Court.

Even in advance of this notice, preparations had begun. Judge SCUDDER informs us that on December 20, 1927, he retained Mr. Emory R. Buckner, a lawyer of distinction, as his counsel in the proceeding; that thereafter he appointed seven associate counsel, two consulting engineers, a firm of accountants, a number of process servers, and suitable clerical assistants, and rented offices for the use of his staff in the city of New York. With the approval of his advisers he laid out at the beginning a comprehensive plan of action. The work was to be separated into two stages or divisions. The first was to be the stage of preliminary investigation. At this neither the accused officer nor counsel for such officer was to be permitted to be present. Witnesses subpœnaed for this branch of the inquiry were to give their testimony *in camera*. The credible was to be sifted from the incredible, the true from the false. Following this investigation was to come the stage of public hearing. Accused and counsel would then be present. So much of the evidence as had already received from the judge the stamp of credibility would be offered anew as if upon a trial. This would be done impartially, regardless of the outcome. " It is my purpose to require all evidence which I regard as credible secured in the course of the preliminary investigation and which is relevant to any of the matters involved in the charges against said Maurice E. Connolly to be presented at the public hearing whether or not said evidence supports said charges." Everything heard by the judge during the first stage of the inquiry was to be shut from his mind except in so far as it might be repeated at the second. He would base his report to the extent of his capacity upon the evidence forthcoming in connection with the hearing to the exclusion of anything that had come to him before.

Such was the program. No sooner was it laid out than

it was put into execution. Witnesses were subpœnaed to attend before Judge SCUDDER in aid of the preliminary investigation and were examined in his presence after being placed under oath. Counsel for the accused official was denied the opportunity to be present, and denied a transcript of the minutes or other information as to the substance of the testimony. The depositions of witnesses procured by the judge under the compulsion of a writ were treated as equivalent to the office notes of counsel, memoranda for private use in a prospective litigation (*People ex rel. Lemon* v. *Supreme Court,* 245 N. Y. 24). They were not embodied in a public record subject to public scrutiny or to inspection by opposing counsel. They will never be so embodied except in so far as it may happen that their contents will hereafter be repeated at the hearing. A preliminary investigation, thus restricted, is not a hearing by a judge. It is a search by an inquisitor.

The assumption of these powers evoked challenge and resistance. On January 9, 1928, divers witnesses, subpœnaed to attend a preliminary session, made application to the Supreme Court to vacate the subpœnas on the ground that they had been issued without warrant of law. On January 24, 1928, Connolly, the accused official, made application to the Appellate Division in the Second Judicial Department for an order of prohibition. Upon the first of these applications, the Supreme Court at Special Term upheld the validity of the subpœnas and denied the motion to vacate them. The witnesses, giving notice that only constitutional questions would be raised, have appealed directly to this court (Constitution, art. VI, § 7, subd. 3; Civil Practice Act, § 588, subd. 3). Upon the second application, the Appellate Division, by its first decision, made an order dated February 6, 1928, commanding Mr. Justice SCUDDER to " desist and refrain from any further proceedings in the matter of the charges against the petitioner by way of taking and hearing the

evidence of witnesses except·at a hearing at which the petitioner is afforded an opportunity of being present." To the extent that the proceeding was public, prohibition was denied.

We have said that this was the ruling of the Appellate Division by its first decision. At that time, section 34 of the Public Officers Law (Cons. Laws, ch. 47) was in the following form:

" The governor may take the evidence in any proceed-· ing for the removal by him of a public officer or may direct that the evidence be taken before a justice of the supreme court of the district, or the county judge of the county in which the officer proceeded against shall reside, or before a commissioner appointed by the governor for that purpose by an appointment in writing, filed in the office of the secretary of state. The governor may direct such judge or commissioner to report to him the evidence taken in such proceeding, or the evidence and the findings by the judge or commissioner of the material facts deemed by such judge or commissioner to be established. The commissioner or judge directed to take such evidence may require witnesses to attend before him, and shall issue subpœnas for such witnesses as may be requested by the officer proceeded against.

" The governor may direct the attorney-general, or the district attorney of the county in which the officer proceeded against shall reside to conduct the examination into the truth of the charges alleged as ground for such removal. If the examination shall be before a commissioner or judge, it shall be held at such place in the county in which the officer proceeded against shall reside as the commissioner or judge shall appoint, and at least eight days after written notice of the time and place of such examination shall have been given to the officer proceeded against.

"All sheriffs, coroners, constables and marshals to whom process shall be directed and delivered under this

section shall execute the same without unnecessary delay."

The ruling by the Appellate Division was swiftly followed by legislation enlarging the powers of the delegate of the Governor in the matter of such charges. By Laws of 1928, chapter 15, which became a law on February 8, 1928, section 34 of the Public Officers Law was amended so as to provide that in any proceeding for the removal of a public officer, the Governor may direct his delegate, whether a judge or a commissioner, to conduct an investigation into the charges, or to take evidence as to the truth thereof at a hearing for such purpose, or both. If such a direction is made, the Governor may require the Attorney-General or the district attorney of the county in which the officer resides to assist the person so appointed both in the conduct of the investigation and thereafter in the hearing. Neither the officer so proceeded against nor the counsel of such officer shall have any right to be present at the investigation unless expressly so permitted. The judge or commissioner is authorized to employ counsel in any case where the Attorney-General or district attorney has not been directed to assist, and to employ such other assistants as may be necessary for the performance of his duties. Whoever is named by the Governor to conduct the inquiry is to be paid the fair value of his services unless he is already employed by the State or by a county or city, in which case he is to serve gratuitously. The expenses are made a county or city charge where the proceeding is one for the removal of a county or city officer. All acts theretofore performed by one designated by the Governor in a pending proceeding are legalized and confirmed.

Upon the adoption of this statute a motion was made to the Appellate Division to vacate its order of prohibition which had been limited, as we have seen, to the inquiry *in camera*. The motion was granted, and prohibition was denied. There is a recital in the order that the denial

was on the law and not in the exercise of any discretionary power.

The two appeals, one by the witnesses from the order upholding the subpœnas, and the other by Connolly from the refusal of the order of prohibition, are here before us now.

We think there has been an attempt by section 34 of the Public Officers Law, both in its original and in its amended form, to charge a justice of the Supreme Court with the mandatory performance of duties non-judicial. He is made the delegate of the Governor in aid of an executive act, the removal of a public officer (*Matter of Guden*, 171 N. Y. 529). At the word of command he is to give over the work of judging, and set himself to other work, the work of probing and advising. His findings when made will have none of the authority of a judgment. To borrow Bacon's phrase, they will not " give the rule or sentence." They will not be preliminary or ancillary to any rule or sentence to be pronounced by the judiciary in any of its branches. They will be mere advice to the Governor, who may adopt them, or modify them, or reject them altogether. From the beginnings of our history, the principle has been enforced that there is no inherent power in Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfilment of judicial duties (*People v. Hall*, 169 N. Y. 184; *Matter of State Indust. Comm.*, 224 N. Y. 13, 16). The exigencies of government have made it necessary to relax a merely doctrinaire adherence to a principle so flexible and practical, so largely a matter of sensible approximation, as that of the separation of powers. Elasticity has not meant that what is of the essence of the judicial function may be destroyed by turning the power to decide into a pallid opportunity to consult and recommend (cf. Frankfurter and Landis, Power of Congress, etc.; a Study in the Separation of Powers, 37 Harvard Law Review, 1010, 1020). The question arose

as far back as 1792. An act of Congress required the Circuit Courts of the United States to examine into the pension claims of soldiers and seamen of the Revolution, and to certify their opinion to the Secretary of War with a view to corrective legislation. The judges of the several circuits concurred in a determination that the duty was not judicial (*Hayburn's Case*, 2 Dall. 409). In 1851 the Supreme Court of the United States considered that determination and approved it, declining jurisdiction under an act not widely different ( *U. S.* v. *Ferreira*, 13 How. [U. S.] 40, 44). There was an opinion by TANEY, C. J., which has become a landmark of the law (*Gordon* v. *U. S.*, 117 U. S. 697; *Matter of Sanborn*, 148 U. S. 222; *Int. Com. Comm.* v. *Brimson*, 154 U. S. 447, 481; *Muskrat* v. *U. S.*, 219 U. S. 346, 353; *Tutun* v. *U. S.*, 270 U. S. 568, 576; *Liberty Warehouse* v. *Grannis*, 273 U. S. 70, 74). Nowhere has the doctrine thus established been applied more steadily or forcefully than in the courts of New York. (*Matter of Davies*, 168 N. Y. 89; *Matter of State Ind. Comm.*, *supra*). The function of the judges " is to determine controversies between litigants " (*Matter of State Ind. Comm.*, *supra*). They are not adjuncts or advisers, much less investigating instrumentalities, of other agencies of government. Their pronouncements are not subject to review by Governor or Legislature (*Dinan* v. *Swig*, 223 Mass. 516). They speak " the rule or sentence."

The statute was thus an encroachment upon the independence of judicial power even in the form in which it stood until recently amended. Still more clearly is it such an encroachment in its form as now reframed. The judge is made a prosecutor. He is to have his counsel and assistant counsel and experts and detectives. He is to follow trails of suspicion, to uncover hidden wrongs, to build up a case as a prosecutor builds one. If he were the district attorney of the county, he would do no more and no less. What he learns is not committed to a record available to all the world. It is locked within

his breast to be withheld or disclosed as his discretion shall determine. No doubt he is to act impartially, neither presenting from malice nor concealing from favor. One might say the same of any prosecutor. The outstanding fact remains that his conclusion is to be announced upon a case developed by himself. Centuries of common-law tradition warn us with echoing impressiveness that this is not a judge's work. We should be sorry to weaken that tradition by any judgment of this court.

Superficial analogies are suggested, but superficial only. A magistrate before whom there is laid an information of the commission of a crime may take the depositions of the informant and prosecutor and of any witnesses produced (Code Crim. Pro. §. 148). His inquiry is judicial. If he finds that a crime has been committed and that there is reasonable cause to believe that the defendant has committed it, he issues a warrant of arrest (Code Crim. Pro. § 150, subd. 2). He does not keep to himself the knowledge thus acquired, but embodies it in depositions which are exhibited to the defendant like any other public record. A justice of the Supreme Court upon proof by affidavit that the moneys of a town or village have been unlawfully or corruptly expended, shall make a summary investigation of the affairs of such town or village, and the accounts of such officers, and in his discretion may appoint experts to make such investigation and may cause the result thereof to be published in such manner as he may deem proper (Gen. Municipal Law [Cons. Laws, ch. 24], § 4). The validity of that statute has been assumed, though never questioned or determined (*Matter of Taxpayers of Plattsburgh,* 157 N. Y. 78; *Matter of Town of Hempstead,* 36 App. Div. 321; 160 N. Y. 685; *Matter of Davies, supra*). There are adversary parties. On the one side are the taxpayers, not less than twenty-five in number, submitting the petition; on the other the suspected officers, to whom notice must be given. Like an examination by

a magistrate, the inquiry is preliminary or ancillary to action unmistakably judicial. " If such justice shall be satisfied " that any of the moneys of such town or village are wasted or misapplied, " he shall forthwith grant an order " restraining such unlawful use. An Appellate Division, charged with a duty to supervise the conduct of its officers, the members of the bar, orders an inquiry into abuses believed to have developed. It may act of its own motion upon a showing of wrongdoing by one member of the bar. There is authority for the view that it may act upon a like showing of wrongdoing by an indeterminate group, whether the group be large or small (*Matter of the Petition of the Assn. of the Bar*, 222 App. Div. 580; *State ex rel. Reynolds* v. *Circuit Court for Milwaukee County*, 193 Wis. 132; 214 N. W. Rep. 396; *Rubin* v. *State*, 216 N. W. Rep. 513). Once more, as with an examining magistrate, inquiry is pursued in aid of a judicial function. We have no occasion to determine with finality whether jurisdiction was legitimately assumed in all these cases or in any of them. However far they go, they do not reach the case at hand. No doubt there are peripheral zones where the judicial and the administrative merge into each other (C. W. Pound, The Judicial Power, 35 Harv. L. R. 787, 789). Other instances can be cited (Greater N. Y. Charter, § 1534; *People ex rel. Mitchel* v. *Cropsey*, 177 App. Div. 663). The hinterland may be plain when the frontier is uncertain.

The range of our decision will not be misapprehended. We deny the power of the Legislature to charge a justice of the Supreme Court with the duties of a prosecutor in aid of the Executive. We do not question its power to lay such duties on the Executive himself or on a commissioner appointed as his agent or adviser. Just as the Governor may investigate and afterwards remove, so his commissioner may investigate and later recommend removal. Neither the one nor the other is subject to the

supervision of the courts (*Matter of Guden, supra*). The argument is made that by a provision of the charter (Greater N. Y. Charter, §§ 122, 382), a president of a borough is to be removed in the same manner as a sheriff, and a sheriff is not to be removed without " an opportunity of being heard in his defense " (Constitution, art. 10, § 1). Nothing in that requirement amounts to a direction that in the performance of an executive act, the function of inquisition shall be divorced from that of hearing and decision. Other answers are available, but they do not have to be developed.

We reach the final stage in the course of the respondent's argument. Granting that functions non-judicial may not be cast upon a judge so as to impose a duty of acceptance, the privilege, we are told, is his to assume the performance of the duty, not in his capacity of judge, but in his private or individual capacity as if named as a commissioner. The action of the circuit judges who refused to hold themselves bound by the act of Congress of 1792 is cited as a precedent. Some of the judges, declining to serve in the capacity of judges, " agreed to construe the power as conferred on them individually as commissioners," and as commissioners reported to the Secretary of War ( *U. S. v. Ferreira, supra* at p. 50; *U. S. v. Todd*, 13 How. [U. S.] 52; cf. *Matter of Gans*, 17 Fed. Rep. 471).

The Constitution of New York provides (Art. VI, § 19): " The judges of the Court of Appeals and the justices of the Supreme Court shall not hold any other public office or trust, except that they shall be eligible to serve as members of a constitutional convention." There is no equivalent provision in the Constitution of the United States. The appellants maintain that service as commissioner in removal proceedings under section 34 of the statute, if not the acceptance of an office, is the acceptance of a public trust.

The prohibition has an ancient history. It goes back

for its origin to the Constitution of 1777. At that time it was limited to the acceptance of an " office." " That the Chancellor and judges of the Supreme Court shall not, at the same time, hold any other office, excepting that of Delegate to the general Congress, upon special occasions; and that the first judges of the County Courts, in the several Counties, shall not, at the same time, hold any other office, excepting that of Senator or Delegate to the general Congress " (Constitution of 1777, art. XXV.) The next Constitution, that of 1821, broadened the prohibition, at least in terms, so as to include not only an office, but any public trust. " Neither the chancellor nor justices of the Supreme Court, nor any circuit judge, shall hold any other office or public trust. All votes for any elective office, given by the legislature or the people, for the Chancellor or a justice of the Supreme Court, or circuit judge, during his continuance in his judicial office, shall be void " (Constitution of 1821, art. V, § 7). The depth of feeling on the subject can be gathered from the form of the resolution as first proposed to the convention by the judiciary committee: " They [the Chancellor and the judges] shall not, on any pretence, hold any other office or public trust, whether created under this constitution, or otherwise; and their acceptance thereof, shall vacate their judicial offices: Nor shall they be eligible to the office of governor, or lieutenant governor, within two years after the expiration, or resignation of their judicial offices " (Journal of Convention of 1821, pp. 101, 108; see also, p. 296). The Constitution of 1846 continued the prohibition without substantial change from that of 1821. " They [the judges of the Court of Appeals and the justices of the Supreme Court] shall not hold any other office or public trust " (Constitution of 1846, art. VI, § 8). A new prohibition was added. " They shall not exercise any power of appointment to public office " (Const. of 1846, art. VI, § 8). This latter prohibition was dropped in the amendment of 1874, very likely in

the belief that it was sufficiently embodied in the clause prohibiting the acceptance of any other public· trust (*People* v. *Hall*, 169 N. Y. 184). No change was made in respect of these provisions by the Constitution of 1894, and none of importance by the revision of the judiciary article of 1926.

The decisions construing the prohibition are halting and obscure. On the one side are *People ex rel. Washington* v. *Nichols* (52 N. Y. 478); *Matter of Hathaway* (71 N. Y. 238), and *People ex rel. Welch* v. *Bard* (209 N. Y. 304). On the other, *Matter of Davies* (168 N. Y. 89); *People* v. *Hall* (169 N. Y. 184); *Matter of Gilroy* (11 App. Div. 65); and in other States, *Case of Supervisors of Election* (114 Mass. 247), and *Board of Supervisors* v. *Todd* (97 Md. 247). One has difficulty in finding the common denominator that will bring them into harmony.

*People ex rel. Washington* v. *Nichols* (*supra*) brought before the court a provision of the appropriation bill of 1871 (L. 1871, ch. 715). The sum of $20,000 was to be paid for relics of George Washington upon the certificate of Martin Grover and two others that the relics were in their opinion genuine. Martin Grover was then a judge of this court, though the statute did not so describe him. He refused to join in a certificate of approval, and the question came up whether he was competent to act. The court defined an office (following an earlier definition in *Matter of Oaths by Attorneys, etc.*, 20 Johns. 492, 493) as " an employment on behalf of the government in any station or public trust not merely transient, occasional or incidental." Office was thus a species of which a public trust was the genus. The court went on to rule that the " doing of such an act, a single act like this," did not involve the " holding " either of an office or a trust within the fair intendment of the constitutional provision. The Legislature had not said that annexed to the judicial office there should be a continuing duty to certify or audit at the request of the Executive or of

others. . The power was exhausted by the performance of " a single act."

*Matter of Hathaway (supra)* brought before the court an act of 1830 (L. 1830, ch. 320), empowering the Supreme Court to appoint a commissioner to serve as a surrogate for the purpose of a particular proceeding, when the surrogate, and other officers having the powers of a surrogate, appeared to be disqualified. The case was decided by a closely divided court. No reference was made in the opinions to this provision of the Constitution. The only question considered was the effect of another provision, whereby the judges were prohibited from exercising any " power of appointment to public office " (Constitution of 1846, art. VI, § 8). The ruling was that since the office of surrogate was not vacant, the designation of a substitute to serve in a single case was not an appointment to " office " any more than an appointment of a referee or a commissioner of appraisal. The term office " embraces the idea of tenure, duration, emolument and duties fixed by law " (Per STONE, J., in *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 520). A " trust " is not an " office," unless clearly so recognized by Constitution or statute, if it lacks the quality of permanence.

*People ex rel. Welch* v. *Bard (supra)* brought before the court the provision of the Military Law of 1908 (§ 115) authorizing a justice of the Supreme Court to execute a certificate or order calling upon the military authorities for aid in case of any breach of the peace, riot, tumult, etc. Plainly there was here no office or public trust apart from that of· judge. The certificate or order was incidental to the duty of a magistrate in the preservation of the peace. With equal reason the point might have been made that a magistrate should be denied the power of a peace officer in making an arrest. " The performance of administrative duties as to matters incidental to the exercise of judicial powers or which have some reasonable connection with a judicial purpose

27

has repeatedly been sanctioned " (Per WILLARD BART-
LETT, J., in *People ex rel. Welch* v. *Bard, supra,* at p. 309).

The foregoing are the chief decisions invoked by the
respondent to sustain his assumption of the duties of a
commissioner. We pass to the cases invoked by the
appellants.

*Matter of Davies* (*supra*) brought before the court the
monopoly act of 1899 (L. 1899, ch. 690) empowering a
justice of the Supreme Court on the petition of the
Attorney-General to make an order, in advance of any
suit, for the examination of a witness. The statute was
analyzed in an elaborate opinion. We upheld it for the
reason that the examination was incidental to a judicial
proceeding, prospective, if not pending. Except for
this feature, the duties would be administrative, and the
order could not stand. If the willingness of a judge to
accept administrative trusts could avail without more to
validate his action, the elaborate opinion was in the main
·a waste of effort. Enough that the order had been made,
and the trusts had been accepted. The opinion is instinct
with a ruling that acceptance would have been futile
unless the duties were judicial.

*People* v. *Hall* (*supra*) brought before the court the
statute empowering the justices of the Appellate Division
to appoint a commissioner of jurors. We upheld it on
the ground that the power, though a public trust, is one
reasonably incidental to the performance of judicial
duties. It is analogous to the one so often exercised by
courts of appointing clerks and other officers " necessary
to the transaction of their business " (*Case of the Super-
visors of Election,* 114 Mass. 247, 250). Such a power
involves a public trust, but not one " other " than the
trust involved in the judicial office. It is, we said, " a
public trust, because it is intrusted to public officers, to
be exercised in behalf of the public, by clothing a private
citizen with the powers and duties of public office "
(Per VANN, J., 169 N. Y. at p. 195).

*Matter of Gilroy* (*supra*), a decision by the Appellate Division, is to the effect that one elected a justice of the Supreme Court vacates through his acceptance of the office an earlier appointment as commissioner of appraisal since by retaining it he would be holding another public trust.

The *Case of the Supervisors of Election* (*supra*) was decided by the Supreme Judicial Court of Massachusetts under a provision of the Massachusetts Constitution substantially the same as ours. It held void a statute whereby a justice of the Supreme Judicial Court was to be permitted, in term time or vacation to appoint two supervisors of election for each of the city wards. " We cannot exercise this power as judges, because it is not a judicial function; nor as commissioners, because the Constitution does not allow us to hold any such office."

*Board of Supervisors* v. *Todd*, decided by the Court of Appeals of Maryland, is in substance to the same effect.

The problem now before us must be viewed in the background of authority supplied by this summary of the precedents. So viewing it, we think that within the constitutional prohibition there was an acceptance of a " public trust."

The statute annexes or seeks to annex to the office of a judge, not a temporary power to be exhausted by a single act (as in the case of the Washington relics), but a continuing power to be exercised whenever occasion shall arise. As often as the Governor commands, the judge is to obey. As often as the need arises, the call is to be met. He is to be a standing commissioner whose function is to serve when summoned. In such circumstances, the public trust does not cease to be continuing and permanent because the judge may be willing to fulfill it on one occasion and unwilling on another. As well might one urge that a power conferred upon the judges to fill vacancies in office whenever they occurred would be something other than a public trust because

the judges might act as to one office and refuse to act
as to another. As well might one say that the order
reviewed by this court in *Matter of Davies (supra)* would
be upheld, though the statute had been read as conferring
administrative powers, on the theory that when separate
applications are separately considered, there is involved
in respect of each the acceptance of a separate trust.
In determining the quality of the trust, regard must be
had to the intention of the Legislature in directing its
creation. If the intention was, as here, to annex a
permanent duty as an incident to the judicial office, a
public trust has been created though the occasions for
discharging it may be irregular or fitful.

The policy at the root of the constitutional prohibition
reinforces this conclusion. The policy is to conserve the
the time of the judges for the performance of their work
as judges, and to save them from the entanglements, at
times the partisan suspicions, so often the result of other
and conflicting duties. Some of these possibilities find
significant illustration in the very cases before us now.
Here is an inquiry which has already separated the
respondent for more than two months from the discharge
of his judicial duties, and which is likely to continue for
many weeks to come. The charges as first submitted
involved a scrutiny of the acts of the accused official in
multifarious transactions for fifteen years or more.
Supplemental charges have now been filed with the result
that the issues are more involved than ever. The great
staff of counsel and assistants engaged upon the work
is a token of its complexity and its probable duration.
Interference so prolonged with assignments to judicial
duty is the very evil that was meant to be hit by the
prohibitions of the Constitution directed against dual
office. True indeed it is that there may be times when
the duties of a commissioner will be less onerous and
protracted. Even so, the nature of the trust must be
measured by its reasonable possibilities. Not what has

been done under a statute, but what may reasonably be done under it, is the test of its validity (*Stuart* v. *Palmer*, 74 N. Y. 183).

The content of the duties tends with as much significance as their duration to point to performance as the acceptance of a public trust.   A commissioner in these proceedings is more than a referee or an arbitrator, whose duties touch the parties affected by his decision, and concern the public interests remotely if at all.   Here the very subject of the inquiry is one distinctively public, the tenure of a public officer.   In pursuing that inquiry, the commissioner is authorized from time to time, so long as he functions as commissioner, to incur bills for his expenses and the expenses of his staff.   These bills, subject to audit, will be payable from the public purse.   If the power to incur such expenses and charge them on the public treasury is not a public trust, one is at a loss to understand how such a trust can be created.

We hold that the respondent is disqualified, while retaining the office of judge, to act as the delegate of the Governor under one name or another.   The prohibitions of the Constitution are not to be evaded through the form of accepting as an individual what the judge must reject. At least that is so when what is done is official and not personal in its quality and incidents.   In this instance neither Legislature nor Executive nor Judge had any thought of evasion.   The Legislature did not intend when a commission was directed to a judge that he should act as an individual, his title as judge being mere *descriptio personæ*.   It annexed the duty to the office (cf. *U. S.* v. *Todd*, 13 How. [U. S.] 52).   The Governor in issuing the commission did not intend to invite co-operation by a private citizen as an act of grace or favor.   The language of the designation is not the language of request or of appointment.   It is the language of command, addressed by the Executive to a member of the judiciary who is expected to obey.   Above all,

the respondent himself had no thought to accept the designation in any new capacity. From first to last he has assumed to act as judge and nothing else. He has made his return and affidavits as a justice of the Supreme Court. He has issued his notices and subpœnas with recitals that describe him as a justice of the Supreme Court, and with the addition of his title as such justice he has signed his name thereto. We were informed by his counsel that in case of need he will exercise the power to punish a contumacious witness for a contempt of his authority, though such power does not exist unless the subpœna has been issued by a justice of the court (Civil Practice Act, § 406). Equivocal acts will be so interpreted as to escape a violation of the constitutional command, and even the risk of violation, when conduct, though permissible, is close to the line of danger. Here the acts are not equivocal. Nothing has been said and nothing has been done with the will to serve in any other capacity than that of a justice of the court.

We are satisfied that in so holding we do not misread the respondent's thought and purpose. The Governor, in selecting a judge so distinguished and experienced, was animated by a high sense of public duty, the desire to name a delegate of unquestioned ability and character. Mr. Justice SCUDDER was animated by a like sense of public duty in responding to a call to service. He thought, beyond a doubt, that the effect of the statute was to annex the duty to the office. If he was uncertain of its validity, he preferred to wait to condemn it until invalidity had been adjudged after argument and deliberation in appropriate proceedings. He supposed that he was discharging his duty as a judge in assuming a heavy burden incidental to the office. There is no reason to believe that his choice would have been the same if he had supposed that he was abandoning, *pro tanto*, his duty as a judge. His conduct is misinterpreted if we read it as evincing an election to step aside from his

judgeship and take upon himself, with all the chances of illegality, the duties of a commissioner.  He has been the judge throughout.

Upon the appeal by Richardson and others, the order of the Special Term should be reversed, and the motion to vacate the subpœnas granted.

Upon the appeal by the petitioner Connolly, the order of the Appellate Division should be reversed, and an order of prohibition granted commanding the respondent to desist from further action as a justice of the Supreme Court in the investigation or hearing of the subject-matter of these charges.

Pound, Crane, Andrews, Lehman, Kellogg and O'Brien, JJ., concur.

Ordered accordingly.