MARY S. PRESCOTT, Plaintiff, *v.* ARTHUR M. FERRIS and Others, as Assessors of the City of Syracuse, New York, and Constituting the Board of Assessors Thereof, and FRANK A. RUPP, as City Treasurer of the City of Syracuse, New York, Defendants.

Fourth Department, May 5, 1937.

*Merwin W. Lay,* for the plaintiff.

*James C. Tormey, Corporation Counsel,* for the defendants.

*Gerber & Winkelstein,* for the Household Realty Corporation, *amicus curiæ.*

*Costello, Cooney & Fearon,* for the Home Realty Holding Co., Inc., *amicus curiæ.*

*Hiscock, Cowie, Bruce & Lee,* for the First Trust and Deposit Company, *amicus curiæ.*

*Brewster & Johnson,* for The Onondaga County Savings Bank, *amicus curiæ.*

*Hancock, Dorr, Kingsley & Shove,* for Augusta Grecco, *amicus curiæ.*

*Warren Winkelstein* and *M. Harold Dwyer* of counsel for *amici curiæ.*

CUNNINGHAM, J. This case is submitted to this court upon an agreed statement of facts.

The assessors of the city of Syracuse in the preparation of the assessment rolls of such city for the year 1936, placed thereon property owned by the plaintiff. The plaintiff appeared before the board of assessors and objected to the valuation placed upon her property, but the board of assessors refused to reduce the same. Plaintiff thereupon appealed to the board of review which, after taking evidence, decided that the valuation of plaintiff's property should be reduced, and filed a decision to that effect in the office of the city treasurer, and served a copy thereof upon the board of assessors. The board of assessors refused to correct the valuation of plaintiff's property and refused to change the valuation thereof upon the assessment rolls to the amount determined to be proper by the board of review.

Chapter 449 of the Laws of 1935, establishing the board of review, has been declared unconstitutional. (*Matter of Household Realty Corp.,* 158 Misc. 667.)

An appeal to this court was taken from the decision in that case but was later withdrawn and the appeal dismissed. As a result the constitutionality of that statute has not been passed upon by this court.

In accordance with the ruling in *Matter of Household Realty Corp. (supra),* the board of assessors has refused to comply with the order of the board of review and has refused to reduce the valuation of plaintiff's property upon the assessment rolls, upon the ground that the board of review is without power to act

upon or review the assessments made by the board of assessors. As a result, if the statute creating the board of review be constitutional, the plaintiff is deprived of the relief to which she is entitled. There is thus a substantial controversy between the parties to this action.

Whether the plaintiff is entitled to the relief demanded depends upon the determination of the constitutionality of the statute creating the board of review.

The members of the board of review are appointed by the justices of the Supreme Court resident in the city of Syracuse (State officers), and it is claimed that they should be appointed by the local authorities of the city or elected by the people thereof.

The members of the board of review must be residents of the city of Syracuse; they must take and file the constitutional oath of office; their compensation and expenses are paid by the city of Syracuse; their duties pertain solely to assessments made by the board of assessors of that municipality. They are officers of the city of Syracuse. (*People ex rel. Bush* v. *Houghton*, 182 N. Y. 301.)

The Constitution provides that "All city * * * officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, * * * or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed as the Legislature may direct." (State Const. art. 10, § 2.)

When a city office is created after the present Constitution went into effect (January 1, 1895), the Legislature may prescribe such method as it deems best for filling such office. (*Matter of Wendell* v. *Lavin*, 246 N. Y. 115.)

It is claimed that new offices are not created by the act establishing the board of review; that all of the powers granted to and duties imposed upon the board of review were exercised and performed by the board of assessors of the city of Syracuse for many years prior to January 1, 1895.

There are special laws providing for the preparation and completion of the assessment rolls of the city of Syracuse. (Laws of 1906, chap. 75, as amd. by Laws of 1923, chap. 304, and Laws of 1935, chap. 449.)

Previous to 1895 the power to prepare the assessment rolls of the city of Syracuse, to hear grievances thereon and to complete the same, was committed to a local board of assessors. (Laws of 1885, chap. 26, §§ 79 to 84, inclusive.) These powers granted to the

assessors were retained in the Laws of 1906, chapter 75, and in the amendment of 1923, chapter 304, although the procedure was changed somewhat.

At the time the statute of 1935 took effect it was the duty of the assessors of the city of Syracuse, after preparing the assessment rolls, to file them for inspection in their office and to give notice of the same, and for fifteen days thereafter to hear complaints and review the assessments and correct the assessment rolls. (Laws of 1906, chap. 75, § 1, as amd. by Laws of 1923, chap. 304.) At the end of thirty-five days after the filing of the rolls for inspection, the power of the assessors to correct the same ceased. (§ 3, added by Laws of 1923, chap. 304.)

The act of 1935 provides that any person aggrieved because of any assessment appearing on the rolls of the city may appeal to the board of review, the appeal to be taken within thirty-five days after the assessment rolls are filed for inspection. The board of review has power to take testimony and proofs under oath; it may consider *de novo* the assessment against which the complaint is made and may modify, reduce or vacate the assessment. If the board reduce or vacate any assessment, the assessors of the city are required to correct such assessment rolls accordingly.

It will be observed that under the act of 1935 an appeal may be taken as soon as the assessment rolls are filed for inspection and that thus the powers of the board spring into existence at the very time the assessors convene to hear grievances. During the fifteen days that the assessors are authorized to hear complaints as to assessments upon the assessment rolls, the board of review has the same power to hear such complaints, and both boards during that time may correct, vacate or reduce assessments. During the additional twenty days in which the assessors may correct the assessment rolls, the board of review may take similar action upon the same assessment rolls. However, the determination of the board of review is superior to that of the assessors and any determination made by the assessors upon a complaint as to a particular assessment would be of no avail if the board of review were considering the same assessment.

The title " board of review " is a misnomer, for that board does not pass upon the completed assessment rolls, but has the power to prescribe the form in which they shall be corrected and completed by the assessors.

While the assessors still have the power to hear complaints against assessments and to act thereon, the practical effect of the statute of 1935 is to take away from them the right to hear grievances and to take binding action thereon. The statute of 1935 confers

powers upon the board of review and imposes duties upon it which have been exercised and performed for a long period of time by the assessors of the city of Syracuse.

The Legislature did not have the right to devolve these powers and duties upon a board the members of which are appointed by State officials. (*People* v. *Raymond,* 37 N. Y. 428; *People ex rel. Metropolitan Street R. Co.* v. *Tax Commissioners,* 174 id. 417: *People ex rel. Town of Pelham* v. *Village of Pelham,* 215 id. 374; *Matter of Wendell* v. *Lavin, supra.*)

In *People* v. *Raymond* (*supra*) the court said (at p. 431): " The plain intention of the section of the Constitution in question, was, to preserve to localities the control of the official functions of which they were then possessed, and this control was carefully preserved, consistent with the power of the Legislature to make needful changes, by restricting the power of appointment of other officers to perform the same functions, to the people, or some authority of the locality."

In *People ex rel. Metropolitan Street Railway Co.* v. *Tax Commissioners* (*supra*), the court (at p. 434) said: " The management of the local political business of localities, whether as large as a county or as small as a village, is intrusted to local officers selected by the communities where these officers act and through which their jurisdiction extends. The principle of home rule is preserved by continuing the right of these divisions to select their local officers, with the general functions which have always belonged to the office. Unless the office, by whatever name it is known, is protected, as the courts have uniformly held, the right to choose the officer would be lost, for with his former functions gone he would not be the officer contemplated by the Constitution, even if the name were retained. Unless the office or officer is mentioned *eo nomine* in the Constitution, the name may be changed, or the office abolished, provided the functions, if retained at all, remain in some officer chosen by the locality. Local functions, however, cannot be transferred to a State officer. The Legislature has the power to regulate, increase or diminish the duties of the local officer, but it has been steadfastly held that this power is subject to the limitation that no essential or exclusive function belonging to the office can be transferred to an officer appointed by central authority. The office may go, but the function must be exercised locally if exercised at all. While no arbitrary line is drawn to separate the powers of local and State officers, the integrity of the local office is protected, with its original and inherent functions unimpaired. It is interference, whether direct or indirect, with the vital, intrinsic and inseparable functions of the office as thus defined and understood that the Constitution prohibits."

In *People ex rel. Town of Pelham* v. *Village of Pelham (supra)* the court, referring to the home rule provision of the Constitution, said: " Embodied in this section is the home rule principle under which the right of self-government is secured to the localities of the State. It includes those rights of self-government which relate to the assessment and collection of taxes for village purposes which the villages enjoyed prior to the adoption of the present Constitution. Taxation for such a local purpose is the concern of the village rather than the town, county and State of which the village is an authorized subdivision. Within this limited local sphere the right to control the assessment and taxation of property for village purposes is a right which the village enjoys by virtue of the home rule provision of the Constitution. It is not merely a privilege which the village is permitted to exercise by the courtesy of the Legislature. The Legislature  *  *  *  cannot take away those local rights of self-government which the municipal corporation enjoyed when the present Constitution was adopted."

In *Matter of Wendell* v. *Lavin (supra)* the court, in holding unconstitutional an act which authorized the commissioner of jurors for the county of Albany to be appointed by two justices of the Supreme Court, resident in the county, and the county judge, compared the previous law for the appointment of the commissioner of jurors with the one under consideration, and said: " Look as I will, I cannot possibly see how the commissioner of jurors under the act of 1899 was a different office to that under the act of 1894. By both acts he was designated the commissioner of jurors; his duty was to procure jurors; he was an official of the county, paid by the county. The later act extended the commissioner's duties to other local courts, provided additional help, a definite term, a few other details for procedure, and nothing more. None of these modifications or extensions of power or additional requirements made of the office a new office. The duties, powers and privileges in the main were the same, and carried on by an official designated as the commissioner of jurors for the county. Within all the authorities, chapter 441 of the Laws of 1899 did not create a new office of commissioner of jurors for the county of Albany " (pp. 122, 123).

The statute of 1935 is unconstitutional because it places in the hands of a board appointed by State officers the same functions that were exercised by the assessors of the city of Syracuse previous to the adoption of the present Constitution.

There is another ground upon which the constitutionality of this act is attacked, and that is, that the power granted to Supreme Court justices to appoint members of the board of review, to fix their compensation and to remove them from office after a hearing upon charges, is a public trust.

A Supreme Court justice may not hold " any other public office or trust " except that he may be a member of a constitutional convention. (State Const. art. 6, § 19.)

The Constitution of this State has distributed the power of government among three departments, the executive, the legislative and the judicial, each with its own powers and duties. (*People ex rel. Burby* v. *Howland,* 155 N. Y. 270, 282: *Matter of Davies,* 168 id. 89, 101.)

The express purpose of the Constitution to keep separate the different departments of government must be considered in determining the significance to be given to the words " public trust " as used in the foregoing section of that document.

In *People* v. *Hall* (169 N. Y. 184) it is said (at p. 195): " The power to appoint a special jury commissioner is a public trust, because it is intrusted to public officers, to be exercised in behalf of the public, by clothing a private citizen with the powers and duties of public office. Unless, therefore, it has some reasonable connection with a judicial purpose, it is not a part of a judicial office and cannot be imposed upon a justice of the Supreme Court."

In *Matter of Richardson* (247 N. Y. 401) it was held that a justice of the Supreme Court could not act as a commissioner under direction of the Governor to investigate charges filed against a public official. The court said: " From the beginnings of our history, the principle has been enforced that there is no inherent power in Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfilment of judicial duties." And further: " If the intention was, as here, to annex a permanent duty as an incident to the judicial office, a public trust has been created though the occasions for discharging it may be irregular or fitful."

Speaking of the policy of the constitutional prohibition, the court further said in that case that it " is to conserve the time of the judges for the performance of their work as judges, and to save them from the entanglements, at times the partisan suspicions, so often the result of other and conflicting duties."

The determination of the board of review of the city of Syracuse under the statute of 1935 may be reviewed by a proceeding in the Supreme Court. Even if not disqualified, a judge who had joined in the appointment of members of the board of review would hesitate to sit in a proceeding in which their action was challenged. The placing of this duty upon Supreme Court justices would interfere with the proper performance of the duties of their judicial offices.

The statute of 1935 must be held unconstitutional upon the ground also that the duties imposed thereby upon Supreme Court justices constitute a public trust, in violation of the provisions of the Constitution of this State.

The submitted controversy is determined in favor of the defendants, with costs.

All concur; THOMPSON, J., having been present at the argument of said appeal, but having died on the 7th day of April, 1937, without having taken any part in the determination of this appeal. Present — SEARS, P. J., EDGCOMB, CROSBY and CUNNINGHAM, JJ.

Submitted controversy determined in favor of defendants, with costs.